By the Court.—Arnoux, J.
This action was-brought to recover damages for a serious injury which the plaintiff sustained on July 7, 1880, by reason of a defect in a bridge at One-hundred and-sixty-first street, and in that part of the city of Hew York, formerly part of Westchester county, commonly known as the annexed district. When the plaintiff rested his case, the complaint was dismissed, upon the ground that whatever negligence was-shown was the negligence of the Park Commissioners, and “ that the plaintiff has no right to recover from the city for the neglect of the Park Commissioners, who-acted by a definite appointment of the legislature.” The only question, therefore, to be considered by the court is, the relation of the Park Commissioners to the city government in respect to the public highways of tire annexed district.
The Commissioners of Central Park were originally appointed in 1857 (chap. 771) for the government of said park, and by section 4 of that act, all the power and authority now by law conferred or possessed by the common council of said city in respect to public squares and places in the city” were conferred upon said commissioners.
In 1859 (chap. 363), the widening of Seventh avenue-was authorized, and the Commissioners of Central Park were directed to regulate the same.
In 1874 (chap. 375), said commissioners were given all the powers and were- authorized to perform all the duties in relation to widening, opening, laying out, grading, regulating, sewering, paving and improving Seventh avenue, that the city or any of its departments possessed.
*320 In 1865 (chaps. 564, 565), part of the city above Central Park was placed under their jurisdiction, with the same power, for the purpose of regulating, grading and improving the streets in said district, that was given them in respect to Seventh avenue.
In 1866 (chap. 367, § 7; chap. 757, § 3), the control and management of certain streets and avenues and the upper part of Broadway or Bloomingdale Road, were transferred to said commissioners.
In 1867 (chap. 580, § 2 ; chap. 697, § 9), the regulating and grading of Eighth avenue, and the control and management, and the regulating and improving of other streets and avenues were transferred to said commissioners.
In 1870 (chap. 137, §§ 95, 96), these commissioners became Commissioners of Public Parks with áll the powers and duties before conferred.
The annexation of the southerly portion of Westchester county was effected, January 1,1874, and in that year (Laws 1874, chap. 329, 432, § 1), the legislature made and constituted the annexed district “a part of the city and county of New York, subject, to the same laws, ordinances, regulations obligations and liabilities, and entitled to the same rights, privileges, franchises and immunities in every respect, and to the same extent, as if such territory had been included within said city and county of NTew York, at the time of the grant and adoption of the first charter and organization thereof, and had so remained up to the passage of this act.”
Said act further provided in section 14: “The Commissioners of the Department of Public Parks of the City of New York shall have the exclusive power to locate and lay out, construct and maintain all public parks, streets, roads and avenues, and to devise plans for and locate all bridges and tunnels, and shall have exclusive control of the maintainance and construction of all public parks within the territory hereby *321 annexed, and to construct and maintain all bridges, tunnels, sewers, streets, roads and avenues so laid out.”
The accomplished counsel for the corporation admits that the defendant would have been liable for this accident, if it had occurred in the city and county of New York, but contends that the provisions above quoted have made a different rule in respect to the annexed district..
Since the year 1834, or 1835, the city of New York has been allowed to select its own mayor, and to be, in a general sense, self-governed. It cannot be supposed that it was the intention of the legislature to elevate a subordinate branch of the city government into an independent body that should have no legal local master, and should thus become an imperium in imperio; nor, if there were such intent, that the legislature would make it servant on one side of the Harlem river and master on the other. There must, therefore, be the strongest and most conclusive evidence of such intent to justify the court in coming to such a conclusion.
Now, it is evident from the review of the laws above cited, that the authority of these commissioners is no more exclusive over the annexed district than it is over certain streets and places in the city and county of New York, and the fact that the language employed in those acts, after construction has been given to them to the effect that the city was master, evinces an intent that the same construction should be given to it in the act in question.
Any other construction would be prejudicial to the tax-payer, whose interests the legislature must intend to subserve. The injured party would not be remediless on defendant’s theory, but this action would be against the Board or its members. It, or they, would necessarily employ counsel to defend. The additional *322 legal expenses and the additional chance of recovery against the defendants, would eventually be borne by the tax-payer, the ultimate sufferer. So, in this view of the case, we think the legislature never intended such results to flow from this legislation.
Now does the law itself bear such construction. The first section, as we have seen, makes the annexed district a part of the city and county of New York, subject to the same laws, obligations and liabilities in every respect and to the same extent as if such territory had been originally part of said city. Section 14 does not in the least degree conflict with, abridge, or modify this. If such territory had originally been, and had continued to be part of the city of New York, under the laws now in force as interpreted by the court of appeals, the defendant would be liable for this accident, as the case was presented to the court below, and would be obliged to pay for it. Before the passing of chapter 329, of Laws of 1874 (p. 440), or of the law which it amended, it was the legal duty of the corporation of the city to keep in repair the highways and streets, as they then existed. In Maxmilian v. Mayor (62 N. Y. 160), the opinion contained the following sentences: “ And the duty of keeping in repair streets, bridges and other common ways of passage and sewers, and a liability for a neglect to perform that duty, rests upon an express or implied acceptance of the power and an agreement so to do. It is a duty with which the city is charged for its own and corporate benefit, to be performed by its own agents as its own corporate act (Conrad v. Trustees of Ithaca, 16 N. Y. 158).”
It does not seem necessary to consider that section 14 of chapter 329 of Laws of 1874,was intended to prevent the duty that existed as to the highways of the old territory, being devolved upon the corporation as respects the highways of the new territory. Before section 14 could go into operation, and irrespective of *323 its provisions, the corporation, as such, became possessed of the new territory with its highways. Upon that, considered by itself, the corporation, under the opinion of the court in the Maximilian case, became liable for any consequence of a neglect to keep the highway in repair. Therefore section 14 is to be understood as a designation of the officers of the corporation who, as officers and agents, and not exercising a power directly conferred upon themselves, should lay out and maintain the highways of the annexed district. The corporation was. to act through them. Whatever they should do or omit to do, was to be the act or omission of the corporation. Their neglect to repair highways would be the neglect of the corporation.
Nor should this court be astute to endeavor to discover any intent of the legislature to free the city from liability, because such liability is illogically imposed. Conceding, for the sake of the argument, that in cases of this character at common law the defendant would not be liable; conceding that the courts in Massachusetts (Hill v. Boston, 122 Mass. 344) have remained true to the common law, and that the courts of this state have diverged from the true doctrine ; conceding that Judge Dillon, in his able work on municipal corporations, is sound in his comments on that decision; nevertheless, the doctrine of corporate liability for accidents of this character is too firmly established in this state to be frittered away by hostile decisions. We believe our courts are right, for the fundamental basis is solus populi suprema lex, and even Judge Dillon is compelled to admit (§ 1023) that the doctrine works well, and is just, and while it must be admitted to be exceptional, it may, we think, be indicated as resting upon the special nature of the duty itself, which is intrinsically ministerial, and upon the ample means which are supplied for its performance.” *324 Ho such construction as the defendant contends for can be given to this act.
In respect to the injuries sustained from the improper condition of its highways and public places, the defendant is liable in the annexed district to the same extent as it is in the rest of the city, and the Department of Public Parks in that regard is simply a part of the city’s machinery and a subordinate department.
The judgment appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event.
Sedgwick, Ch. J., and Freedman, J., concurred.