## ESBERG CIGAR CO. v. CITY OF PORTLAND.

[43 L. R. A. 445, 55 Pac. 961.]

1. MUNICIPAL WATER WORKS—LIABILITY FOR NEGLIGENCE.*—A system of water works operated for profit by a city belongs to the municipality in its private rather than in its public or governmental character, and the city is liable as a private proprietor would be for the negligent construction or maintenance thereof.

2. IDEM.—The appointment of the water committee of a city by the legislature, and the fact that it is independent of the control of any other department of the municipal government, will not relieve the city from liability for injuries caused by its negligence in the construction or maintenance of the city water works.

3. MUNICIPAL AGENTS—RESPONDEAT SUPERIOR.—By adopting a charter providing for the construction of water works, and for a committee to operate the system when complete, the people of a city make such committee the agent of the municipality, for whose negligence it must answer, under the doctrine of *respondeat superior*.

4. RESPONSIBILITY FOR ACTS OF MUNICIPAL AGENTS.—The responsibility of a city for the acts of its officers or agents does not depend upon the manner of their appointment, but upon the character of their duties: if these are political or governmental, the city is not liable for their negligence; but if the duties concern what may be called the private affairs of the corporation, it is liable.

5. EVIDENCE OF NEGLIGENCE.—Evidence that a certain water main had burst three times, including the occasion complained of, each time under an ordinary pressure, coupled with testimony that water pipe of that size and thickness will not ordinarily break under such circumstances, if properly constructed and laid, is sufficient to carry the case to the jury on the question of negligence in the construction of the pipe.

---

*NOTE.—In 30 Am. St. Rep., at pp. 376–413, is a monographic note discussing the Liability of Cities for the Negligence and Other Misconduct of Their Officers and Agents. See, also, *O'Rourke* v. *City of Sioux Falls*, 46 Am. St. Rep. 765, 19 L. R. A. 789.

A very complete collection of the authorities on the Liability of Municipal Corporations for Property Destroyed by a Mob, is published with the case of *Gianfortone* v. *New Orleans*, 24 L. R. A. 592. See, also, *New Orleans* v. *Abbagnato*, 62 Fed. 240 (26 L. R. A. 329).—REPORTER.

6. INFERENCE OF NEGLIGENCE.*—The mere happening of an accident causing injury justifies an inference of negligence when the cause of the injury is under the control of the defendant, and the accident is such as in the ordinary course of things does not happen if proper care is used in the management.

From Multnomah : ALFRED SEARS JR., Judge.

This is an action by the Esberg-Gunst Cigar Company against the City of Portland, to recover damages for an injury to plaintiff's goods, caused by the bursting of an alleged negligently defective water main belonging to the defendant city, and the consequent flooding of the cellar in which such goods were stored.   In 1885 the charter of the City of Portland was amended by adding thereto an additional chapter (Laws, 1885, p. 97), by which the city was authorized and empowered to construct, or purchase, keep, conduct, and maintain water works therein of a character and capacity sufficient to furnish the city and its inhabitants with water for all uses and purposes necessary for the comfort, convenience, and well-being of the same, and to issue and dispose of its bonds for that purpose : §§ 142, 153.   The powers thus given to the city were to be exercised by fifteen resident taxpayers thereof, named in the act, styled collectively "The Water Committee," nine of whom should constitute a quorum, and who were authorized to fill by appointment all vacancies which may occur in their number :   §§ 143, 145. This committee was required to organize within a certain time by the election of a chairman and clerk, whose du-

---

*NOTE.—As to presumptions of negligence from the occurrence of accidents in cases of personal injuries, injuries to livestock by railway trains, and in cases of railway fires, see note to *Barnowski* v. *Helson*, 15 L. R. A. 33.

The following cases have footnotes on the Inferences of Negligence that may be Justified by the Happening of Accidents:  *Fleming* v. *Pittsburgh, etc. Ry.*, 38 Am. St. Rep. 837, 22 L. R. A. 351;  *Stearns* v. *Ontario Spinning Co.*, 63 Am. St. Rep. 809, 39 L. R. A. 842;  *Judson* v. *Giant Powder Co.*, 29 L. R. A. 718, 48 Am. St. Rep. 146; *Haynes* v. *Raleigh Gas Co.*, 26 L. R. A. 316, 41 Am. St. Rep. 786;  *Shafer* v. *Lacock*, 29 L. R. A. 254;  *Philadelphia, etc. R. R. Co.* v. *Anderson*, 20 Am. St. Rep. 490, 8 L. R. A. 673.—REPORTER.

ties were prescribed by the act (§§ 144, 146–148); to appoint a treasurer, who shall have the care and custody of all moneys received by the committee from the sale of bonds, or otherwise, for the construction or purchase of water works, and shall pay out the same on the order of the chairman, countersigned by the clerk of the committee, and not otherwise (§ 149); to employ and discharge, from time to time, such other agents, workmen, laborers, and servants, at such compensation or wages as it may deem necessary and convenient to the accomplishment of the purposes of the act (§ 151). It is further provided that whenever and as soon as the works provided for in the act are, in the judgment of the committee, ready for use, it shall select from its members, if a sufficient number will consent to serve, and, if not, from the resident taxpayers of the city, five persons for the several terms of two, four, six, eight, and ten years, who shall be styled individually "Water Commissioners," and collectively, "The Water Commission," to which it is required to turn over the water works, and all property appurtenant thereto, together with all books, papers, and accounts relating to the construction or purchase thereof; and thereafter the power and authority given by the act to the city to keep, conduct, and maintain water works shall be exercised by such commission: §§ 154, 155, 157. After The Water Commission has been selected by the committee, as provided in the act, the members of such commission shall thereafter be appointed by the Governor of the state from among the resident taxpayers of the city, as vacancies may occur from time to time. The commission is given power (1) to employ, hire, and discharge all such agents, workmen, laborers, and servants as it may deem necessary and convenient in the conduct and management of the water works; (2) to make all needful rules and regulations in reference thereto; (3) to

establish rates for the use and consumption of water by the city and inhabitants thereof, including the people living along the line, or in the vicinity of the works without the city; (4) to provide for the payment of water rates monthly in advance, and to shut off the water from any house, tenement, or place for which the water rate is not duly paid, or when any rule or regulation is disregarded or disobeyed; (5) to do any other act or make any other regulations necessary and convenient for the conduct of its business, and the due execution of the power and authority given it by the act, and not contrary to law : § 159. All money collected or received by the commission for the use and consumption of water, or otherwise, is required to be deposited with the treasurer of the city, who shall keep the same separate and apart from other funds, and pay it out on the order of the chairman of the commission, countersigned by the clerk, and to the holder of any overdue interest coupons of the bonds issued under the provisions of the act, on the presentation and surrender thereof : § 158. It is made the duty of the commission, annually, before the first day of January, to make a written estimate of the probable expense of maintaining and conducting the water works during the ensuing year, and also the cost of any contemplated alteration, improvement, or extension, and thereupon ascertain and prescribe, as nearly as it conveniently can, a water rate for such year that will insure a sufficient income from the sale of water to pay such expense and costs, together with one year's interest on the bonds then issued and outstanding : § 160. And, after the expiration of five years, in fixing the water rates, it is authorized to include in its estimate therefor a sum equal to one per centum on the par value of the bonds then issued and outstanding, which sum shall be collected and invested under the direction of the commission as a sinking fund

for the payment or redemption of such bonds: § 161. Immediately after the act of 1885 became a law, the persons named therein as The Water Committee proceeded to organize as directed, and to issue and dispose of city bonds, from the proceeds of which they purchased, in December, 1886, the plant of the Portland Water Company, a private corporation then engaged in supplying the city and its inhabitants with water for hire, and subsequently commenced to enlarge the works so purchased by the construction of a gravity system, by which water should be taken from Bull Run Creek at a point some miles distant from the city. The act of 1885 was, in substance, incorporated in the latter act (Laws, 1891, p. 796), providing for the consolidation of the cities of Portland, East Portland, and Albina, which went into effect in July, 1891, after having been accepted by a majority of the legal voters of the several cities interested, at an election held for the purpose in June, 1891, and is also contained in the subsequent charter of 1893 (Laws, 1893, p. 810). During the process of enlarging the works, The Water Committee, during the year 1892, laid a twenty-four-inch main on Fourth Street, and connected it with the other mains comprising the water system. On January 13, 1896, this main burst, and the waters escaping therefrom flooded the streets, and the cellars of the adjoining buildings, including the premises occupied by the plaintiff and used as a tobacco and cigar store, to its damage in the alleged sum of $2,667.87 Its claim therefor having been rejected by the city, this action was brought, resulting in a judgment of nonsuit, from which the appeal is taken.

REVERSED.

For appellants there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Wirt Minor*.

For respondent there was a brief over the names of *Wm. M. Cake*, former City Attorney, and *Fred L. Keenan*, together with a supplemental brief and an oral argument by *Mr. Joel M. Long*, City Attorney, and *Mr. Ralph R. Duniway*.

Mr. Justice Bean, after stating the facts, delivered the opinion of the court.

In support of the judgment it is contended : First, that the water works belong to the city in its public or governmental capacity, and it is therefore not liable to a common-law action for negligence in constructing or maintaining the same ; second, that The Water Committee, under whose direction and control they were constructed, and were being maintained at the time of the accident, is an independent body, appointed by the state for public governmental purposes, over which the city has no control, and for whose negligence it is not liable under the common-law doctrine of *respondeat superior;* and, third, that there was not sufficient evidence of negligence given on the trial to carry the case to the jury as a question of fact.

1.   There is a well-established distinction made by the authorities between the liability of a municipal corporation for the acts of its servants, agents, officers or employees, done in the exercise of powers and duties granted to or imposed upon it as a mere agency of the state and performed exclusively for public governmental purposes, and acts done in the exercise of powers granted to or privileges conferred for its own profit, advantage and

emolument, although inuring incidentally to the public. This distinction, though a very shadowy one at times, and though much difficulty has been experienced by the courts in determining within which class a particular case should be placed, nevertheless is well settled, and has governed the decision in many cases. It is alluded to by Mr. Justice Strahan in *Caspary* v. *Portland*, 19 Or. 496 (20 Am. St. Rep. 842, 24 Pac. 1036), and is very clearly stated by Folger, J., in *Maximilian* v. *New York*, 62 N. Y. 160, 164 (20 Am. Rep. 468): "There are two kinds of duties which are imposed upon a municipal corporation," he says. "One is of that kind which arises from a grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public, and is used for public purposes. * * * The former is not held by the municipality as one of the political divisions of the state; the latter is. In the exercise of the former power and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly. But where the power is entrusted to it as one of the political divisions of the state, and is conferred, not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for nonuser, nor for misuser by the public agents." Accordingly, it has been held that municipal corporations are not responsible for the negligence or wrongful acts of health officers or boards of health (*Bryant* v. *City of St. Paul*, 33 Minn. 289, 23 N.

W. 220, 53 Am. Rep. 3 ; *Ogg* v. *Lansing*, 35 Iowa, 495,
14 Am. Rep. 499 ; *Brown* v. *Inhabitants of Vinalhaven*,
65 Me. 402, 20 Am. Rep. 709 ; *Barbour* v. *City of Ells-
worth*, 67 Me. 294) ; or of employes of the commissioners
of public charities and correction (*Maximilian* v. *Mayor
of New York*, 62 N. Y. 160, 20 Am. Rep. 468) ; or of offi-
cers or members of their fire or police departments
(*Hafford* v. *City of New Bedford,* 16 Gray, 297 ; *New
Orleans* v. *Abbagnato*, 23 U. S. App. 533, 62 Fed. 240, 10
C. C. A. 361, 26 L. R. A. 329 ; *Fisher* v. *City of Boston*,
104 Mass. 87, 6 Am. Rep. 196 ; *Burrill* v. *City of Augusta*,
78 Me. 118, 58 Am. Rep. 788, 3 Atl. 177 ; *Wilcox* v. *City
of Chicago*, 107 Ill. 334, 47 Am. Rep. 434 ; *City of Rich-
mond* v. *Long*, 17 Gratt. 375, 94 Am. Dec. 461 ; *Elliott* v.
*City of Philadelphia*, 75 Pa. 347, 15 Am. Rep. 591 ; *Gil-
lespie* v. *City of Lincoln*, 35 Neb. 34, 16 L. R. A. 349, 32
N. W. 811 ; *Calwell* v. *City of Boone*, 51 Iowa, 687, 33
Am. Rep. 154) ; nor for the negligent construction, main-
tenance, or use of appliances for the extinguishment of
fires (*Hayes* v. *Oshkosh*, 33 Wis. 314, 14 Am. Rep. 760 ;
*Springfield Ins. Co.* v. *Village of Keesville*, 148 N. Y. 46,
30 L. R. A. 660, 51 Am. St. Rep. 667, 42 N. E. 405 ;
*Edgerly* v. *City of Concord*, 62 N. H. 8, 13 Am. St. Rep.
533 ; *Tainter* v. *City of Worcester*, 123 Mass. 311, 25 Am.
Rep. 90) ; or for an injury caused by a negligent defect
in a school building (*Ham* v. *Mayor of New York*, 70 N.
Y. 459 ; *Hill* v. *City of Boston*, 122 Mass. 344, 23 Am.
Rep. 332) ; or for an injury received by the giving way
of the floor of a town house used for holding town meet-
ings and other public purposes (*Eastman* v. *Meredith*, 36
N. H. 284, 72 Am. Dec. 302).

But when a special power or privilege is conferred
upon or granted to a municipal corporation, to be exer-
cised for its own advantage or emolument, and not as a

mere governmental agency, it is liable to the same extent as an individual or a private corporation for negligence in managing or dealing with the property rights or franchises held by it under such grant. Thus if, in repairing a building belonging to the city, and used in part for municipal purposes, and in considerable part also as a source of revenue to the corporation, the agents and servants of the city dig a hole in the ground adjoining, and negligently leave it open and unguarded, so that a person rightfully walking on a path leading by the building, although not a public highway, falls into such hole, and is injured, the city will be liable to an action at common law for the injury: *Oliver* v. *City of Worcester*, 102 Mass. 489 (3 Am. Rep. 485). So, also, when the city owns a wharf, and receives and charges wharfage for its use, it is bound the same as a private individual to use ordinary care and diligence in keeping it safe and free from obstructions, and is liable in an action at common law for damages done to a vessel by reason of neglect of such duty: (*City of Petersburg* v. *Applegarth*, 28 Gratt. 321, 26 Am. Rep. 357; *Pittsburgh City* v. *Grier*, 22 Pa. 54, 60 Am. Dec. 65; *Mersey Docks Board* v. *Gibbs*, 11 H. L. Cas. 686). In accordance with this distinction, it is quite universally held that when a municipal corporation voluntarily undertakes to construct and maintain water or gas works in pursuance of statutory authority, for the purpose of supplying the inhabitants thereof with water or gas at rates established by the city, it is liable for an injury in consequence of its acts in constructing and maintaining such works, the same as a private corporation or individual. "A municipal corporation, owning water works or gas works which supply private consumers on the payment of tolls," says Mr. Dillon, "is liable for the negligence of

its agents and servants the same as like private proprietors would be :"    2 Dillon, Mun. Corp. § 954.

The doctrine is well stated by LEWIS, C. J., in *Western Saving Fund Society* v. *City of Philadelphia*, 31 Pa. 183 (72 Am. Dec. 730), in speaking of a municipal corporation as the owner of gas works.    "The supply of gas light," he says, "is no more a duty of sovereignty than the supply of water.    Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means.    If this power is granted to a borough or a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good.    The whole investment is the private property of the city, as much so as the lands and houses belonging to it.    Blending the two powers in one grant does not destroy the clear and well-settled distinction, and the process of separation is not rendered impossible by the confusion.    In separating them, regard must be had to the object of the legislature in conferring them.    If granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character.    But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hoc* is to be regarded as a private company.    It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."    To the same effect, see also *Bailey* v. *Mayor of New York*, 3 Hill, 531 (38 Am. Dec. 669); *Hand* v. *Brookline*, 126 Mass. 324; *Perkins* v. *Lawrence*, 136 Mass. 305; *Stoddard* v. *Winchester*, 157 Mass. 567 (32 N. E. 948); *Aldrich* v. *Tripp*, 11 R. I. 141 (23 Am. Rep. 434, 19 Am. L. Reg. N. S. 743); *San Francisco Gas Co.* v. *San Francisco*, 9

Cal. 453; *Scott* v. *Manchester*, 2 Hurlst. & N. 204; 2 Beach, Pub. Corp. § 1140; and 1 Dillon, Mun. Corp. (3 ed.), § 58. Unless, therefore, there is something in the facts of this case to take it out of the general rule, the liability of the defendant to persons injured by the negligent manner in which the water works in question were constructed or are maintained cannot be questioned.

2. The argument of the defendant on the second point is that, although the works in fact belonged to the city, and were paid for with funds derived from the sale of its bonds, they were built in pursuance of a public duty, involuntarily imposed upon the municipality by express legislative mandate, and therefore are owned and controlled by the city as a public or governmental agency, and not in its private or proprietary capacity; and also that the committee under whose direction and supervision the works were constructed and are now operated and maintained is an independent body appointed by and acting as an agent of the state, over which the city has no control, and for whose negligence it is not responsible. In support of the position that the works belong to the city in its public, as distinguished from its private, capacity, reliance is had principally upon the decision of this court in *David* v. *Portland Water Committee*, 14 Or. 98 (12 Pac. 174). That was a suit brought by a resident and taxpayer to restrain the water committee named in the act of 1885 from issuing and disposing of the bonds of the municipality, and constructing water works in pursuance of such act, on the ground that it was unconstitutional and void, and would unlawfully impose a burden upon the taxpayers of the city. The only ruling in that case which has any bearing upon the question now before us was that, under the circumstances, the supplying of the City of Portland and its inhabitants with water which had to be brought

by means of pipes from some place outside of the city was not so essentially a private purpose that the legislature could not constitutionally appoint the agents of the city for the construction of such works. But it does not follow from this view that the works when constructed would not belong to the city in its private or corporate capacity. Indeed, the entire reasoning of the opinion permits the clear inference, it seems to us, that the court never lost sight of the fact that they would be the property of the city, but, notwithstanding this, concluded that the object sought to be accomplished was so impressed with a public purpose that the determination of the legislature as to the necessity for such an enterprise, and its selection of the agents of the city by whom the work should be undertaken, was valid, and conclusive upon the courts. The act authorizing the construction of the works and appointing the committee to have control thereof became a part of the charter of the city. Under it the city alone was authorized and empowered to construct and maintain them. The money therefor was to be raised by the sale of its bonds, and the court expressly held in the *David Case* that the members of The Water Committee were "no more than agents of the city required by the act to carry out its provisions," and should not be regarded as officers. So we conclude that there is nothing in the doctrine of that case to exempt the City of Portland from the general rule which applies to all municipal corporations owning and operating water works for the purpose of supplying its inhabitants with water for hire on the theory that the works are owned by it in its public or governmental, as distinguished from its private, capacity.

3. Nor do we concur in the position that the city is not liable for the negligent acts of The Water Committee and its servants and employees under the doctrine of

*respondeat superior.* It is true, this doctrine is grounded upon the right of an employer to select his servants, and discharge them if careless, unskillful, or incompetent, and to direct and control them while in his employ. But, whatever may have been the legal relation of The Water Committee to the city prior to the consolidation act of 1891, it is clear that thereafter it became as much the agent or representative of the municipality, within the scope of the powers conferred upon it, as any other officer or agent provided for in the charter. When the people of the cities of Portland, East Portland, and Albina by popular vote accepted the charter of 1891, containing, in substance, the same provisions as the act of 1885 creating and naming the Water Committee, and vesting in it and a commission thereafter to be appointed the power to construct, manage, and control the water system belonging to the city, they must be deemed to have thus accepted such committee and commission as their agents to carry out the work. By the terms of the charter, the water committee and commission are made agents or representatives of the municipality as much as the mayor, common council, or any other officer provided for therein. Each of these officers or agents is charged with the performance of certain municipal duties, and it takes all of them to constitute the corporation. The inhabitants within certain described territory were, by the act of 1891, created a municipal corporation, with certain defined rights, powers, privileges, and duties, to be exercised by agents and officers provided for in the act of incorporation. And it cannot be said that one of the officers thus provided for is any more the agent or representative of the municipality than the other. Nor is the manner of their appointment, if valid, of any consequence in determining their representative capacity. The legislature, in the exercise of its plenary powers over muni-

cipal corporations, thought best to provide that certain powers which it granted to the City of Portland should be exercised by officers and agents of its own selection. This legislation was held valid in *David* v. *Portland Water Committee*, 14 Or. 98 (12 Pac. 174), but it does not make the agent so selected any the less the representative of the municipality. The power and authority given to The Water Committee by the charter is not, as counsel seem to think, exclusive of the city, but only exclusive of any other agent or officer of the city. The right and power to construct and maintain water works is expressly vested in the municipality. Its exercise is devolved by the charter upon The Water Committee. But this is a duty which they discharge, not for themselves, nor for the public generally, but for the city.

4. As said by Earl, J., in *Ehrgott* v. *New York*, 96 N. Y. 264 (48 Am. Rep. 622), in discussing the liability of a city for an injury received in consequence of a defective street which was under the exclusive control of a commission whose duties were prescribed and defined by the charter : "The city must act through officers and agents, and it is for the legislature to determine what powers and duties shall be devolved upon them. It matters not how ample or exclusive their powers may be, nor how independently they may act, nor how they are chosen. If they are provided by law, and authorized to discharge a corporate duty which rests upon the municipality, then, in the discharge of that duty, they represent the municipality, and it may be chargeable with their misfeasance and nonfeasance * * * To determine whether there is municipal responsibility, the inquiry must be whether the department whose misfeasance or nonfeasance is complained of is a part of the machinery for carrying on the municipal government, and whether it was at the time engaged in the discharge of a duty or charged with a

duty primarily resting upon the municipality. For these views the cases of *Bailey* v. *New York*, 3 Hill, 538 (38 Am. Dec. 669, 2 Denio, 433), and *Barnes* v. *District of Columbia*, 91 U. S. 540, are ample authority, and the case of *Richards* v. *New York*, 16 Jones & S. 315, is a precise authority."

The cases of *Bailey* v. *New York*, and *Barnes* v. *District of Columbia*, referred to by Mr. Justice EARL, are very much in point in the present discussion. In the former an action was brought against the City of New York by one who had been injured in his property by the careless construction of a dam across Croton River at a point about forty miles distant from the city, for use as a part of the system for supplying the city and its inhabitants with water. The work was constructed under the control of water commissioners appointed by the Governor, and in whose appointment the city had no voice ; and it was contended there, as here, that the defendant was not chargeable for negligence or unskillfulness in the construction of the dam, because the commissioners were acting in a public capacity, and, like other public agents, not responsible for the misconduct of those necessarily appointed by them ; and also on the ground that, inasmuch as the water commissioners were not appointed by the city, nor subject to its direction or control, it was not liable for their conduct. But Mr. Justice NELSON, in an opinion which, although it has been somewhat criticised, has stood the test of time, and is now generally regarded as sound, disposes of both of these objections in such a clear and lucid way as to leave but little to be said upon the subject. Examining the position that, "admitting the water commissioners to be the appointed agents of the defendants, still the latter are not liable, inasmuch as they were acting solely for the state in prosecuting the work in question, and therefore

are not responsible for the conduct of those necessarily employed by them for that purpose," he says : "We admit, if the defendants are to be regarded as occupying this relation, and are not chargeable with any want of diligence in the selection of agents, the conclusion contended for would seem to follow.  They would then be entitled to all the immunities of public officers charged with a duty which, from its nature, could not be executed without availing themselves of the services of others ; and the doctrine of *respondeat superior* does not apply to such cases.  If a public officer authorize the doing of an act not within the scope of his authority, or if he be guilty of negligence in the discharge of duties to be performed by himself, he will be held responsible ; but not for the misconduct or malfeasance of such persons as he is obliged to employ.  *  *  *  But this view cannot be maintained upon the facts before us. The powers conferred by the several acts of the legislature authorizing the execution of this great work are not, strictly and legally speaking, conferred for the benefit of the public.  The grant is a special, private franchise, made as well for the private emolument and advantage of the city as for the public good.  The state, in its sovereign character, has no interest in it.  It owns no part of the work.  The whole investment under the law, and the revenue and profits to be derived therefrom, are a part of the private property of the city ; as much so as the lands and houses belonging to it situate within its corporate limits.  The argument of the defendants' counsel confounds the powers in question with those belonging to the defendants in their character as a municipal or public body ; such as are granted exclusively for public purposes to counties, cities, towns, and villages, where the corporations have, if I may so speak, no private estate or interest in the grant.  As the powers

in question have been conferred upon one of these public corporations, thus blending in a measure those conferred for private advantage and emolument with those already possessed for public purposes, there is some difficulty, I admit, in separating them in the mind, and properly distinguishing the one class from the other, so as to distribute the responsibility attaching to the exercise of each. But the distinction is quite clear and well settled, and the process of separation practicable. To this end regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc*, is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."

And in answer to the objection that the commissioners were the agents of the state, and not the city, he says: "We have already given our views of the character of this work, and of the capacity in which the defendants hold the powers under which it has been executed. If we are not mistaken in that conclusion, and they are to be regarded as a private company, like any other body of men upon whom special franchises have been conferred for their own private advantage, such as banking and railroad corporations, then the appointment of the agents by the state did not make them less the agents of the defendants. The appointment in this way is but one of the conditions upon which the charter was granted, and stands on the footing of any other condition to be found

in the grant, subject to which it has been accepted.     By accepting the charter, the defendants thereby adopted the commissioners as their own agents to carry on the work.''

*Barnes* v. *District of Columbia,* 91 U. S. 540, was an action brought to recover damages for a personal injury received by the plaintiff in consequence of the defective condition of one of the streets of the City of Washington. By the act creating the municipal corporation of the District of Columbia it was provided that there should be a board of public works, composed of the City Governor and four other persons, to be appointed by the President, with the consent of the senate, who should have entire control of, and make all regulations which they shall deem necessary for, keeping in repair the streets, avenues, and alleys of the city ; and the principal defense in the case was that, in view of these provisions, the municipality was not liable for the negligence of such board.     But it was held that a municipal corporation, in the exercise of its duties, is a mere department of the state, having such powers as the state may, from time to time, at its pleasure, confer, and that it can act only by its agents and servants ; but this does not mean or imply that the acts must be done by inferior or subordinate agents, but, on the contrary, the higher the authority of the agent, the greater is the responsibility of the principal.     Mr. Justice Hunt, in speaking for the court, says :     ''A municipal corporation may act through its mayor, through its common council, or its legislative department, by whatever name called, its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the province committed to its charge.     Nor can it, in principle, be of the slightest consequence by what means these several officers are placed in their position— whether they are elected by the people of the munici-

pality, or appointed by the President or a governor. The people are the recognized source of all authority, state and municipal; and to this authority it must come at last, whether immediately or by a circuitous process. An elected mayor or an appointed mayor derives his authority to act from the same source, to wit, that of the legislature. The whole municipal authority emanates from the legislature. Its legislative charter indicates its extent, and regulates the distribution of its powers, as well as the manner of selecting and compensating its agents. The judges of the supreme court of a state may be appointed by the Governor, with the consent of the senate, or they may be elected by the people. But the powers and duties of the judges are not affected by the manner of their selection. The mayor of a city may be elected by the people, or he may be appointed by the Governor, with the consent of the senate ; but the slightest reflection will show that the powers of this officer, his position as the chief agent and representative of the city, are the same under either mode of appointment. Whether his act in a case in question is the act of and binding on the city depends upon his powers under the charter to act for the city, and whether he has acted in pursuance of them ; not at all upon the manner of his election. It is equally unimportant from what source he receives compensation, or whether he serves without it.'' These authorities would indicate the true rule to be that the responsibility of the municipality for the acts of its officers or agents does not depend upon the manner of their appointment, but upon the duty devolved upon them. If such duty appertains to mere political or governmental affairs, the municipality is not liable ; but if it pertains to the private affairs of the corporation, it is liable for their negligence, the same as a private individual.

Our attention is especially called by the defendant's counsel to the cases of *Maxmilian* v. *New York*, 62 N. Y. 160 (20 Am. Rep. 468); *Ham* v. *New York*, 70 N. Y. 459, and *Springfield Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46 (30 L. R. A. 660, 51 Am. St. Rep. 667, 42 N. E. 405). But, as pointed out by Mr. Justice EARL in *Ehrgott* v. *New York*, 96 N. Y. 264 (48 Am. Rep. 622), the Maxmilian and Ham cases were actions brought against the city for the negligence of employees of certain boards and commissions who were not engaged in the discharge of any duty which rested upon the city.   And *Springfield Ins. Co.* v. *Keeseville*, was an action to recover damages for a failure to keep the water system belonging to the city in condition to furnish protection from fires, and was defeated on the ground that the use of water works for the extinguishment of fire was a public, and not a private, purpose,—a distinction which is quite clearly pointed out in *Edgerly* v. *City of Concord*, 62 N. H. 8 (13 Am. St. Rep. 533) which was an action brought to recover damages for an injury received through the negligent use of a fire hydrant by the officers and agents of the city.   We conclude, therefore, that the City of Portland is liable for the negligent act of The Water Committee charged in the complaint, notwithstanding the fact that its members were appointed by the legislature, and are independent of the control of any other department of the city government.

5.   And this brings us to the question as to whether there was sufficient evidence of negligence on the part of the servants or employees of the committee to carry the case to the jury.   The evidence on behalf of the plaintiff was to the effect that the pipe in question was laid in 1892, by The Water Committee, and connected with the general water system of the city ; that it burst twice, prior to the time of the accident which caused

the injury to plaintiff's goods, under an ordinary pressure; that at the time of the accident there was no unusual or extraordinary pressure upon the pipe, or reason why it should have burst at that time. The evidence further shows that a water pipe of its size and dimensions, when properly constructed and laid, will not ordinarily burst under such a pressure; and these circumstances, in our opinion, were sufficient to carry the case to the jury.

6. As a general proposition, a party who alleges negligence as a cause of action must, of course, prove it; but under some circumstances the accident itself and the consequent injury may be of such a nature as to raise a presumption of negligence, and thus cast upon the defendant the duty of showing that he was free from fault. The rule seems to be that whenever a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of an explanation by the defendant, that the accident arose from a want of care : *Scott* v. *London Docks Co.*, 3 Hurlst. & C. 596. And to the same effect, see 1 Shearman & Redfield, Neg. §§ 59, 60; Thompson, Neg. 1230; *Mullen* v. *St. John*, 57 N. Y. 567 (15 Am. Rep. 530); *Warren* v. *Kauffman*, 2 Phila. 259; *Hucy* v. *Gahlenbeck*, 121 Pa. 238 (6 Am. St. Rep. 790, note; 15 Atl. 520). It follows from these views that the judgment of the court below must be reversed, and a new trial ordered.

REVERSED