### E. S. WOODWARD *vs.* LIVERMORE FALLS WATER DISTRICT.

### Androscoggin. Opinion March 6, 1917.

*Water districts. "Corporate and Governmental duties" of Municipalities defined.*
*Rule as to whether a Municipality engaged in the business of supplying*
*water to its inhabitants is an undertaking of a private nature.*
*Rule of law as to liability when a Municipality is engaged in a*
*corporate exercise of functions as distinguished from a*
*governmental exercise. Contractural rights and*
*liabilities as between a private user of water*
*and the Municipality furnishing same.*

The defendant is a public municipal corporation chartered for the purpose of
furnishing a public water supply. The plaintiff is a resident of the district and
a customer of the company. The supply of water to the defendant was insuffi-
cient by reason of the fault of the company. When the plaintiff refused to
pay full rates for such insufficient service the company shut off the water
entirely. Mandamus proceedings having compelled the company to restore
the service, the plaintiff brings this action to recover damages sustained on
account of the insufficient service before shutting off the water, and for those
sustained on account of the total shutting off of the same.

*Held:*

1. The defendant is a public municipal corporation and its powers, duties, and
   liabilities must be measured by the same standards used in determining the
   powers, duties and liabilities of other municipal corporations when exercising
   the same functions, under the same circumstances.

2. In the absence of any special rights conferred, or liabilities imposed, by legis-
   lative charter, municipal corporations act in a dual capacity, the one corporate,
   the other governmental. To the former belongs the performance of acts done
   in what may be called their private character, in the management of property
   or rights held voluntarily for their own immediate profit and advantage as a
   corporation, although ultimately insuring to the benefit of the public.

3. The power of a municipal corporation to construct water works is not a
   political or governmental power, but a private and corporate one, granted and
   exercised not to enable it to control its people but to authorize it to furnish, to
   itself and to its inhabitants, water for their private advantage:

4. The rules of liability applicable to private corporations are applicable to
   municipal corporations also when they are engaged in the exercise of a corporate
   or private function.

5. In the case at bar we are concerned with contractual liabilities because the plaintiff's writ declares "that by reason of the contractual relations between them, and the payment by the plaintiff to the defendant of the rates demanded by it, it became the legal duty of the defendant to give him, barring emergencies, a regular and full supply of water.

6. Although a water company may enter into written contracts with its customers upon certain terms yet a contract is also implied where the company furnishes water and the customer uses it and pays for it, without written agreement, the one party being bound in such case to continue the service and the other to pay for it at the established rates.

Action on the case brought by plaintiff against defendant based upon defendant's alleged negligent failure to supply plaintiff with a regular and full supply of water. Plaintiff refused to pay to defendant the regular rates and the defendant shut off the water supply. Mandamus proceedings were brought against defendant to compel the restoration of the water service, and after hearing, the sitting Justice ruled that the shutting off of the water was not justifiable. This action is to recover damages for the failure to furnish a suitable supply of water, as well as damages occasioned by the unjustifiable shutting off of the water. The case was referred to Chief Justice Savage as referee; his findings were accepted by the Justice at nisi prius, to which ruling exceptions were filed by defendant. Exceptions overruled. Judgment for plaintiff in the sum of forty dollars damages, together with the taxable costs of court according to stipulation in report of referee.

Case stated in opinion.

*George S. McCarty*, for plaintiff.

*George C. Wing, George C. Wing, Jr., and I. B. Clary*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, PHILBROOK, JJ.

PHILBROOK, J. The defendant is declared by its charter, found in Chapter 390 of the Private and Special Laws of 1907, to be a public municipal corporation. The territorial limits of the district comprise only a portion of the town of East Livermore. The purpose for which the corporation was formed is "supplying the inhabitants of said district and of the towns of Livermore and Jay, and such municipalities, together with the town of East Livermore, with pure water for domestic, sanitary and municipal purposes." The charter

authorizes the corporation to fix and collect rates for water furnished to individuals, firms and corporations; which rates are to be so established as to provide revenue to pay the current expenses of operation, provide for payment of interest on all indebtedness created or assumed by the district, provide a sinking fund, and if any surplus remains at the end of any year it may be paid to the town of East Livermore. The plaintiff is an inhabitant of the district and brings this action to recover damages for the failure of the defendant to furnish him with a sufficient and regular supply of water.

The case was heard before a referee. From the report of his findings we learn that during the summer of 1913, by reason of lack of pressure, the supply of water which came to the plaintiff's house was insufficient at certain hours of the day, both for his own family use and for the use of his tenant in the upper part of the house. The shortage of water occurred during the hours when the defendant was engaged in pumping water through its street mains into its reservoir. This pumping reduced the pressure and thus caused the shortage of supply. Because of this insufficient service the plaintiff refused to pay the regular and usual rates, but offered to pay for what water he had received. The defendant refused this offer and shut off the water from the plaintiff's house for non-payment of rates. Through mandamus proceedings the defendant was ordered to restore service upon payment by the plaintiff of a certain sum of money, found to be due by the Justice who heard the case, but less than the regular rates.

This suit was then instituted as we have said, to recover damages sustained by reason of insufficient service before shutting off the water, and for those caused by shutting off the water entirely. The referee found as matters of fact that the water service rendered to the plaintiff had been insufficient, and not a fair and reasonable performance of its duty; that the insufficiency was caused by the defendant's own conduct; that when the plaintiff refused to pay full charges and, as a consequence thereof, the defendant shut off the water, such conduct on the part of the latter was not justifiable. In order to afford the parties an opportunity to test the legal questions necessarily involved the following finding was made subject to the opinion of the court.

"If the court is of opinion that the defendant is liable for want of sufficient service before it shut off the water entirely, and as well for damages occasioned by unjustifiable shutting off of water, judgment

is to be rendered for the plaintiff for the sum of forty dollars damage. If the defendant is liable for damages occasioned by the shutting off of water, but not for want of sufficient service before that time, judgment is to be rendered for the sum of twenty-one dollars damage. If the defendant is not liable either for the want of sufficient service before, or for shutting off the water, judgment is to be rendered for the defendant."

At the hearing in the court below, upon motion to accept the report, it was ordered that the report be accepted and judgment rendered in favor of the plaintiff for forty dollars damages. Exceptions to these rulings bring the case before us.

In this State, as well as in many others, there has arisen a somewhat general legislative practice of creating sub-divisions of territory and people which are denominated districts, and which are empowered to perform some public function more commonly performed by cities or towns.

"It is beyond question that the state in the exercise of its governmental powers, may create subdivisions of its territory and people, and impose upon the subdivisions the performance of public duties for the good and welfare of the people. Such subdivisions are merely the instrumentalities or agencies appointed by the State to fulfill some part of its own functions, within a limited territory. They are public instrumentalities, or agencies, both because they are doing the state's proper work, and because they are concerned with public uses for the general public benefit. . . . . . These territorial subdivisions may be conterminous with city or town limits, or they may embrace more or less than the territory of a city or town. The character of a subdivision depends not upon the limits of its territory, but upon the nature of its public duties, whether municipal or not. For the term municipal relates not only to a town or city, as a territorial entity, but it also pertains to local self government in general, and in a broader sense to the internal government of a state." The same opinion holds that "a body politic and corporate, created for the sole purpose of performing one or more municipal functions, is a quasi municipal corporation and, as we have said, in common interpretation is deemed a municipal corporation." *Augusta* v. *Augusta Water District*, 101 Maine, 148.

This defendant is one of those territorial subdivisions and, as such have been declared to be municipal corporations, its powers, duties,

and liabilities, must be measured by the same standards used in determining the powers, duties and liabilities of other municipal corporations when exercising the same functions, under the same circumstances.

"In the absence of any special rights conferred, or liabilities imposed, by legislative charter, towns and cities act in a dual capacity, the one corporate, the other governmental. To the former belongs the performance of acts done in what may be called their private character, in the management of property or rights held voluntarily for their own immediate profit and advantage as a corporation, although ultimately inuring to the benefit of the public, such as the ownership and management of real estate, the making of contracts and the right to sue and be sued; to the latter belongs the discharge of duties imposed upon them by the Legislature for the public benefit, such as the support of the poor, the maintenance of schools, the construction and maintenance of highways and bridges, and the assessment and collection of taxes." *Libby* v. *Portland,* 105 Maine, 370.

Since this district claims, as a full legal defense to this action, that it is performing only a governmental function for the nonuser or misuser of which it is not liable in a suit at law, we must again call attention to the fact that its only function is that of furnishing a public water supply for itself and its inhabitants, for the contiguous town of Jay and its inhabitants, and for the towns of Livermore and East Livermore. Moreover, by the very terms of its charter, the assumption and performance of this function is entirely voluntary since the acceptance of the creative act depended upon the affirmative will of the voters of East Livermore, the town out of which the district is carved.

The Federal courts have universally held that the power of a city to construct water works is not a political or governmental power, but a private and corporate one, granted and exercised not to enable it to control its people but to authorize it to furnish, to itself and to its inhabitants, water for their private advantage. *Illinois Trust & Savings Bank* v. *Arkansas City,* 76 Fed. Rep., 271; *Pike's Peak Power Co.* v. *City of Colorado Springs,* 105 Fed. Rep., 1; *Omaha Water Co.* v. *City of Omaha,* 147 Fed. Rep., 1.

By what we regard the better reasoning and consequently the greater weight of authority a large majority of the State courts follow the rule laid down in the federal jurisdiction, namely, that a

municipal corporation engaged in the business of supplying water to its inhabitants is engaged in an undertaking of a private nature. *Piper* v. *Madison*, 140 Wis., 311; 122 N. W., 730; *People* v. *Detroit*, 28 Mich., 229; 15 Am. Rep., 202; *Aldrich* v. *Tripp*, 11 R. I., 141; 23 Am. Rep., 434; *Judson* .v. *Winsted*, 80 Conn., 384; 68 Atl., 999; *Wagner* v. *Rock Island*, 146 Ill., 139; 34 N. E., 545; *Esberg Cigar Co.* v. *Portland*, 34 Ore., 282; 55 Pac., 961; *Brown* v. *Salt Lake City*, 33 Utah, 222; 93 Pac., 540; *Hourigan* v. *Norwich*, 77 Conn., 358; 59 Atl., 487; *Lynch* v. *Springfield*, 174 Mass., 430; 54 N. E., 871; *Philadelphia* v. *Gilmartin*, 71 Pa. St., 140; *Asher* v. *Hutchinson Water Co.*, 66 Kan., 496; 71 Pac., 813. *Keever* v. *Mankato*, 113 Minn., 55; 129 N. W., 158; *Oakes Manfg. Co.* v. *New York*, 206 N. Y., 221; 99 N. E., 540; 42 L. R. A. New series, 286. We desire to call particular attention to the last cited authority because of its peculiar applicability and because defendant places considerable emphasis and reliance on *Springfield F. & M. Ins. Co.* v. *Keeseville*, 148 N. Y., 46. In the Oakes Manufacturing Company case the same court which rendered the opinion in the Keeseville case noted the differences between the two, saying that the opinion and decision are to be read in the light of the facts which were involved. Having pointed out that in the Keeseville case the defendant was acting in a governmental capacity, and hence not liable, it added "But in the present case, when, in accordance with the powers conferred on it, the city undertook to maintain a municipal water system and to supply water to private consumers at a fixed compensation, it was not acting in such capacity as above stated. (governmental). It entered on an enterprise which involved the ordinary incidents of a business wherein was sold that which people desired to buy, and which might become a source of profit, and under these circumstances it became liable for breach of contract or for negligence, as the proprietor of a private business might become."

In many of the cases above cited questions of negligence were under discussion but they illustrate the dual nature of municipal functions. They are also in harmony with the opinion of this court in *Libby* v. *Portland,* supra.

As to the liability of municipal corporations when engaged in a corporate, as distinguished from a governmental exercise of functions, we must hold that the rules of liability applicable to private corporations are applicable to municipal ones also. Their application in

cases arising from acts of negligence is so clearly discussed and well applied in *Libby* v. *Portland*, supra, that no further discussion is now necessary. In the case at bar we are more concerned with contractual liabilities because the plaintiff's writ declares "that by reason of the contractual relations between them, and the payment by the plaintiff to the defendant of the rates demanded by it, it became the legal duty of the defendant to give him, barring emergencies, a regular and full supply of water." The plaintiff also declared upon a failure of that duty and the referee found as fact, conclusive here as such, that the alleged failure existed by fault of the defendant.

We are therefore confronted with the inquiry as to whether the relations between the parties constituted an implied contract and, if so, whether this defendant is liable in damages for a breach thereof. Would these same relations between the plaintiff and a confessedly private water company raise an implied contract. We think the question must be answered in the affirmative. It is held in 40 Cyc., 793, upon the authority of cases there cited, that although a water company may enter into written contracts with its customers upon certain terms yet "a contract is also implied where the company furnishes water and the customer uses it and pays for it, without written agreement, the one party being bound in such case to continue the service and the other to pay for it at the established rates." The highest court in our country has said that rents imposed for water actually used have been held valid on the ground of an implied contract to pay them. *Provident Institution, etc.*, v. *Mayor, etc., of Jersey City*. 113 U. S., 506; 28 L Ed. 1102. This case was cited with approval in *City of East Grand Forks* v. *Luck*, 97 Minn., 373; 107 N. W., 393; 6 L. R. A. N. S., 198.

A case particularly applicable to the one at bar is found in *McEntee* v. *Kingston Water Co.*, 165 N. Y., 27; 58 N. E., 785. In that case, as in this, the supply of water to the plaintiff lessened in quantity and pressure, and at times wholly failed. Upon the refusal to pay water rates the company shut off the water. The defendant, when injunction proceedings were instituted to restrain the company from shutting off the water, pleaded that no privity of contract existed between it and the plaintiff. The court pointed out the facts that the defendant was charged with the duty of supplying the city of Kingston and its inhabitants with water for domestic and manufacturing purposes; that it had failed to perform this duty in the plaintiff's

case; that the defendant was a quasi public corporation, owing certain duties to the general public; and when it connected the plaintiff's house with its street mains, and furnished him water with more or less regularity for a period of years, an implied contract existed to the effect that if the defendant performed, the plaintiff would pay its rates. The court also held that the duties imposed upon the corporation raised an implied promise of performance; and finally said "The law supposes that the corporation promises or undertakes to do its duty, and subjects it to answer in a proper action for its defaults, whether of nonfeasance or misfeasance." In *Powell* v. *City of Duluth*, 97 N. W., 450, it was held, in distinguishing between taxes and water rates, that in the case of the latter the relation of the city furnishing water to the customer is that of contract. The liability of a water company in damages for breach of a special contract is fully discussed in *Milford* v. *B. R. & E. Co.*, 104 Maine, 233; and we held that the general principles therein discussed are applicable to the case at bar.

To summarize therefore, we hold that the defendant is not acting in a purely governmental capacity but in a private and corporate one; that its powers, duties and liabilities must be measured by the standards used in determining the powers, duties and liabilities of private corporations doing the same business; that an implied contract existed between it and the plaintiff for the breach of which, through its own fault, the defendant is liable.

> *Exceptions overruled*
> *Judgment for plaintiff in the sum*
> *of forty dollars damages, together*
> *with taxable costs of court as per*
> *stipulation in report of referee.*