## STATE EX REL. R. O. STEIDLEY v. VILLAGE OF KILKENNY AND OTHERS.[1]

March 11, 1927.

No. 25,858.

**Abandonment of village pipe line and revocation of relator's permit.**

Where it appears that a village council by motion directed an inch water-pipe to be laid in one of its streets for the purpose of supplying water from the water-main to generate acetylene gas for its lighting plant located at its town hall, and afterwards by motion permitted relator and others to tap this one-inch line so laid, the village council by motion could abandon said pipe line and revoke the permit granted relator.

Waters, 40 Cyc. p. 796 n. 34 New.

[1] Reported in 212 N. W. 899.

Relator appealed from a judgment of the district court for Le Sueur county, Tifft, J.   Affirmed.

*Moonan & Moonan,* for relator.

*John E. Regan,* for respondents.

HOLT, J.

Mandamus to compel the village council of Kilkenny to supply water to relator.   The court directed a verdict in favor of defendants. A new trial was denied and judgment entered from which the appeal is taken.

The facts appear to be as follows:   Some years prior to 1910, probably pursuant to an ordinance adopted in 1903, the village installed a water tower and laid an 8-inch main for about two blocks west therefrom, thence south on Linden avenue, the main street of the village, a 6-inch main for two blocks, and there is a continuance further south of a 1½ inch pipe line which appears to serve private parties.   Along the 8 and 6-inch mains were placed hydrants for public use.   In 1910 the village had a town hall in connection with which there was an acetylene gas plant which needed water for operation, and at a meeting of the village council "it was voted that a one-inch galvanized pipe be used on Elm Street from Linden Ave. to City Hall to be used for water supply for light generator in city or village hall."   Pursuant to that motion an inch iron pipe was laid on the north side of Elm street from the 6-inch main to the hall, a distance of nearly two blocks.   After that was done one Hollinger, a renter of a farm adjoining the village on the west, obtained permission to tap this one-inch pipe for the purpose of getting water for his stock at the barn located south of Elm street.   Hollinger sold the pipe line he laid to the barn to relator, and afterwards when a town officer wanted to tap the pipe sold, the village refunded $18 to relator and connection therewith was made.   Later the village placed meters at these connections.   Another person north of Elm street and adjacent to the town hall was also granted permission to connect with the one-inch pipe laid by the village.   The ground through which the pipe passed was such that it corroded the metal very

quickly, requiring repairs or relaying of parts thereof. In 1920 relator was asked to contribute and did so to the amount of $25 for such repairs. When in 1925 the pipe again sprung aleak near the main, the water was turned off and relator notified that the village would no longer maintain that pipe line unless he would undertake to keep it in repair. It may be mentioned, although of no legal bearing on the case, that an ordinance for abolishing this pipe line and the 1½-inch extension south from the 6-inch main, submitted by the council to the electors, was rejected.

The court in directing a verdict construed the evidence as justifying no other finding than that relator was a mere licensee permitted to make connection with the private water-pipe of the village. Of course, if there was room for finding the line a part of the public water system of the village, the court erred. In passing upon the question the situation as a whole must be considered.

Kilkenny is a small straggling village where the installation of a water supply is primarily for fire protection, and it cannot be expected that by providing for that primary need the village obligated itself to extend water-mains in front of the premises of every inhabitant who might desire to connect therewith. Cognizance must also be taken of the fact that, while installing a water system for public use, the village may also in its proprietary capacity connect therewith for its private use or business enterprise the same as an inhabitant may connect with the main designed for public use. On this record there can be no doubt that this one-inch pipe line in Elm street was laid, not for public use in that it was designed for supplying the properties abutting Elm street for two blocks with water, but solely to furnish the acetylene plant the village was operating at the town hall with the water needed to produce gas, which at that time was generated for lighting. purposes. Hollinger so knew, and every other person when permitted to tap this line knew that the grant was a favor or license, and not one of right possessed by a property owner abutting a public utility such as a sewer or water-main to connect therewith. So that this license to tap the private pipe line of the village could be revoked at any time upon reasonable notice. The fact that so long as the license lasted there

had been paid the same rates for the water used that the users of water connected with the main paid, or that repairs needed on this one-inch pipe had been partly or wholly paid by relator, or that the village had installed meters does not, to our mind, affect the question or change the mere license into a permanent grant.

It is not claimed, nor could it be claimed successfully, that the village by undertaking to install this limited water system obligated itself to extend to every lot owner along the platted streets the right to have a water-main laid in front of his lot. There is no statute or ordinance of the village under which relator may claim the right to have a water-main in front of his premises, or making it the duty of the village council to supply the inhabitants thereof with water. Not until 1911 was there a statute authorizing inhabitants of villages to petition for installation of mains in front of their property. The case of State ex rel. W. J. Armstrong Co. v. City of Waseca, 122 Minn. 348, 142 N. W. 319, 46 L. R. A. (N. S.) 437, is cited to the proposition that when a municipality undertakes to furnish the public directly with a facility or commodity which it could grant a franchise to others to furnish, it is governed by the same rules of law as the franchise holder would be governed by. With this there can be no quarrel. There is also quite a difference between supplying electric energy and sewer or water service, and no question was made in the Waseca case of any expense or difficulty in delivering the power to Armstrong. It would have been another question had the village installed a water-main or pipe in Elm street for the purpose of furnishing owners of abutting property or occupants with water. Such was not the case, and relator well knew that when he was permitted to tap the pipe it was a pipe the village brought in from the main for its private use. Woodward v. Livermore F. W. Dist. 116 Me. 86, 100 Atl. 317, L. R. A. 1917D, 678, involved the right to charge full rates for less than a normal supply and is not in point.

In Haugen v. Albina L. & W. Co. 21 Ore. 411, 28 Pac. 244, 14 L. R. A. 424, the defendant had, at the request of two property owners and for a consideration paid by them, extended a water-main

to their property; in so doing, the main passed in front of the relator's. The defendant had a franchise for laying water-mains in the streets and supplying the public with water, and it was held that the relator had the right of connection upon the same terms as any other property owner abutting the mains of defendant. The decision is no doubt sound. Decisions from California and Idaho to which we are referred do not give much aid, for especially in the former state constitutional and statutory provisions peculiar to those states are applied.

There are authorities holding that, since a private person has no right to disturb the surface of the street, the obligation falls upon the municipality, or upon the franchise holder authorized to maintain public utilities in the streets, to install the mains and pipes and keep them in repair, and some go so far as to hold that the connections must be brought within the property line of the user. But cases may also be found holding that under proper regulation property owners may make the necessary connections and be compelled to repair them when needed at their own expense. To do so it is nearly always necessary to disturb the surface on some part of the street. It could not be claimed successfully that the village could have been enjoined from laying the pipe in Elm street from the water-main to the town hall, and we know of no statute or charter provision of the village which would prevent the council's granting the same privilege to others, the safety and convenience of travelers and users of the street being adequately safeguarded.

The ordinance of 1903, above referred to, authorized the village council to supply, through and by means of waterworks, mains and pipes or system of waterworks, water to the inhabitants for private or domestic uses for compensation to be fixed by the council. To it was also reserved the right to tap or oversee the tapping of all mains and pipes belonging to the village and to lay "the pipes from the mains to the sidewalks," and make reasonable charges therefor. The ordinance is entirely silent as to where the mains are to be laid, or how those are to proceed who desire the same in any street, where not voluntarily installed by the council. Under the statute

now existing three or more may petition to have the council lay a water main upon a street (G. S. 1923, § 1238), and this would seem to furnish a remedy to relator and those who had a mere license to tap the line on Elm street. This course of obtaining a water supply subjects the property abutting to assessments for the cost thereof (§ 1239 and succeeding sections).

Another reason suggests itself to us as adequate to sustain the decision of the learned trial court. As stated, the only ordinance of the village relating to laying of water-mains or pipes in the streets of the village fails to designate the streets upon which they shall be laid. It could not be contemplated that all streets should be provided with them. We have been referred to no charter provision touching the subject, and not until the enactment of chapter 346, p. 471, Laws of 1921, was provision made by statute for abutting property owners to secure water-mains or pipes in the street. The laying of the pipe to the town or village hall as well as the permission to relator to tap it was done by mere motion at a council meeting. The abandonment of this pipe was also by motion. It occurs to us that if it be granted that the village council was authorized by motion only to lay the pipe it was also authorized by like motion to abandon the pipe and revoke the permission granted relator to tap it. No one on Elm street had been assessed for laying or installing a water-main or service pipe in the street. Again, if it be conceded that the village council had no authority by charter, ordinance or statute to lay a pipe line on Elm street, it of course could and should abandon the same. In whatever way the facts herein are viewed a verdict was rightly directed in favor of respondents.

The judgment is affirmed.