# J. A. McKEE ET AL. v. A. H. COFFIN.

### (Case No. 5326.)

1. REMOVAL TO UNITED STATES COURT—ATTACHMENT—DAMAGES—MARSHAL—A United States marshal, against whom suit is instituted in a state court to recover damages for an illegal seizure of property under an attachment not authorizing the seizure, is not entitled, merely because he is marshal, to remove the case to the federal court. (Authorities reviewed.)

2. SAME—JURISDICTION—The marshal's filing a transcript of the record in the federal court, and the plaintiffs' taking a non-suit there, after the overruling of the motion for removal, do not affect plaintiffs' right to have the cause tried in the state court.

3. EVIDENCE—EXECUTION OF DEED—See opinion for evidence of the execution of a deed of assignment held sufficient to authorize its admission in evidence.

4. ASSIGNOR—INTENTION—An assignor is presumed to know that the deed of assignment, to be valid, must convey all his property, except such as is exempt; and is presumed to have intended to make a valid assignment.

5. ASSIGNMENT—AGENCY—ACT OF MARCH 24, 1879—The act of March 24, 1879, regulating assignments, creates no exception to the general rule, that what a party under no disability may do in person, he may ordinarily do through an agent.

6. SAME—VALIDITY—INVENTORY AND SCHEDULE—It is not essential to the validity of an assignment that the inventory and schedule be verified by the oath of the debtor, nor that the court be able at any time to examine the assignor as to property supposed to be concealed, or to compel him to deliver such property to the assignee.

7. SAME—JURISDICTION—The law simply makes an assignment, made under the laws of this state, valid here, and that the assignee may not be able to enforce it against property in another jurisdiction cannot affect its validity.

8. INTERVENTION—LEGAL RIGHT—INDEMNITY BOND—Suit was instituted against a U. S. marshal to recover the value of property seized under attachment. Plaintiffs in the attachment proceedings sought to intervene upon the grounds that they had given the marshal a bond of indemnity, and that he had desired them to defend the suit and given notice of his intention to look to them for indemnity against any judgment rendered against him. *Held:*

    (1) Though such a course, when not objected to, has frequently been allowed, plaintiffs in the attachment proceedings had no *legal right* to intervene.

    (2) No right of theirs was imperilled by a refusal to allow them to intervene.

APPEAL from from Grayson. Tried below before the Hon. R. Maltbie.

Appellee, A. H. Coffin, as assignee, brought suit in the district court of Grayson county, on February 7, 1883, to recover of J. A. McKee, United States marshal, the value of certain wagons, buggies, etc., alleged to have been unlawfully appropriated by McKee. Plaintiff claimed the goods as the assignee of Kniffin Bros. under a deed of assignment made December 6, 1882. Among other things, defendant filed his petition and bond for removal to the circuit court of the United States. This motion was overruled May 7, 1883. Defendant

then filed a transcript of the proceedings in the circuit court of the United States, had the cause docketed in that court, and at the December term, 1883, it was called for trial, and plaintiff, Coffin, took a non-suit. In September, 1884, the cause was tried in the state court, and, a jury having been waived, the court rendered judgment in favor of plaintiff for $1,414, with interest and costs. The opinion states all other necessary facts.

*Alex. White* and *Hare & Head*, for appellants, on the right of the marshal to remove the cause to the United States court, cited: Houser *v.* Clayton, 3 Woods, 273; Ellis *v.* Norton, 16 Fed. Rep., Jan. 1883, p. 4; Western Un. Tel. Co. *v.* Nat. Tel. Co., 19 Fed. Rep., April 8, 1884, p. 561; Railway Company *v.* Mississippi, 102 W. S., 135.

On agency, they cited: McAlpine *v.* Cassidy, 17 Tex., 449; Reese *v.* Medlock, 27 Tex., 120; Parson's on Cont., 13; McWhorter & Baldwin *v.* McMahan, 10 Paige, 386; Blood *v.* Goodrich, 9 Wend., 68; Story on Agency, sec. 242.

To show that the act of March 24, 1879, was intended to apply to resident debtors, they cited: Ackerman *v.* Cross, 54 N. Y., (Lick) 29; *In Re* Willson, 4 Barr., 430; Hardmann *v.* Bowen, 39 N. Y.,196; Hanford *v.* Paine, 32 Vt., 443; *In Re* Page Lumber Co., 16 Northwestern Repr., 700; Crapo *v.* Kelly, 16 Wall., 610.

*Cawles & Story*, for appellee.

STAYTON, ASSOCIATE JUSTICE.—This ·action was brought by the appellee to recover the value of certain property alleged to have been illegally taken from his possession and converted by the defendant, McKee. The appellee asserts title through an assignment made by S. W. and W. G. Kniffin, for the benefit of their creditors, under the statutes regulating assignments for that purpose, approved March 24, 1879.

The defendant, McKee, admitted the seizure, and attempted to justify under the fact that he made the seizure as marshal for the United States for the northern district of Texas, under an attachment which issued from the circuit court of the United States, at the suit of Fish Bros. & Co., against the firm of Kniffin Bros., which was composed of S. W. and W. G. Kniffin, who were engaged, prior to the assignment, in a mercantile business at Denison, Texas. McKee also alleged, that the assignment, through which the plaintiff claimed, was invalid on several grounds, and that the property was subject to the attachment.

Fish Bros. & Co. sought to intervene in the cause, and asserted that

before the marshal levied their attachment, he required them to give to him a bond of indemnity, which they did; and that since the institution of this action, the marshal had notified them of its pendency and of his desire for them to defend it, and had further notified them of his intention to look to them for indemnity against any judgment which might be rendered in this cause against him. They also set up the pendency of their action against Kniffin Bros. in the circuit court of the United States, and gave a statement of the cause of action in that case, as had the marshal, in his answer.

The court below refused to permit Fish Bros. & Co. to intervene, after which they filed their petition and bond to remove the cause to the circuit court of the United States, they averring that they were citizens of the state of Wisconsin.

Their petition for removal was overruled. The defendant, McKee, also filed a petition and bond for removal of the cause to the circuit court of the United States, which was also overruled. The sole ground upon which McKee sought to remove the cause to the federal court was that he was United States marshal for the northern district of Texas, and as such marshal, levied the attachment which issued out of the circuit court of the United States. It is stated that the attachment issued under and by virtue of a law of the United States, and that it only authorized the seizure of the property of the persons who composed the firm of Kniffin Bros., but neither the pleadings nor petition for removal aver that the suit is one arising under the laws of the United States, nor that the defendant has a defence arising under such laws.

If the attachment only authorized the seizure of such property as belonged to S. W. and W. G. Kniffin, or to either of them, then the seizure of the property of some other person under it, made the marshal, as would it any other officer, simply a trespasser. There is no question raised as to the official character of McKee, nor as to the validity of the writ under which the seizure was made. The sole question is as to his liability for a seizure, under a valid writ, of property which, it is claimed, the writ did not authorize him to seize. It has been held that an action against a marshal of the United States and the sureties upon his bond for the seizure of a stock of goods under proceedings in bankruptcy, the action being on the bond, was a suit of a civil nature arising under the constitution and laws of the United States, which might be removed from a state court to a federal court. Feibelman v. Packard, 109 U. S., 421.

The same ruling, in effect, was made in McKee v. Brooks, 64 Tex., 307.

The case before us, however, presents no such question, but presents the simple question, whether in a suit brought against a person who was United States marshal, to recover damages for an illegal seizure of property under an attachment that did not authorize the seizure, he is entitled, simply because he was marshal, to remove the case from the state to the federal court.

If so, it cannot be because the suit is one arising under the constitution or laws of the United states, and must be upon the sole ground that the person who holds such an office, if he so elects, is entitled to have his cause tried in a federal court.   We are aware of no law which confers such right.   It has been thought proper by congress to give to officers, appointed under or acting by authority of the revenue laws of the United States, and under laws intended to secure to all the equal enjoyment of the elective franchise, the right to a trial in a federal court if claimed.   U. S. R. S., 643.

Under this statute it was held that while a United States marshal and deputy marshal were not officers appointed under the revenue laws of the United States, yet they were entitled to remove a cause pending against them in a state court to a federal court, if the act which is made the basis of the action be one done under the authority of a revenue law of the United States.   Davis v. South Carolina, 107 U. S., 597.

This was not because the defendant was a marshal or deputy marshal, but because of the fact that he was acting under the revenue laws. The fact that the right to remove, from the state court to a federal court, is given to those persons whose duty it is to enforce named laws, or who may be appointed under them, strongly evidences the intention of congress that only those so appointed or employed shall have such right by reason of the laws under which they are appointed or act.   The filing of a transcript of the record in the federal court, and the action subsequently had in that court, could not affect the right of the appellee to have the cause tried in the state court which properly acquired and retained jurisdiction.

The sufficiency of the deed of assignment, involved in this case, to pass the entire property, partnership and individual, which, at the time of the assignment, belonged to the persons who composed the firm of Kniffin Bros., except such as was exempt from forced sale, was passed upon in Coffin v. Douglass, 61 Tex., 406.   It is now urged that the court below erred in admitting in evidence the deed of assignment, because there is no sufficient evidence that it was ever executed by S. W. Kniffin.   The evidence shows that he was not present when the deed was executed, but that prior to its execution he had directed

this to be done by those who did execute it, upon the happening of a then contemplated contingency.

It further shows that he was at once notified of the execution of the deed by those to whom he had previously given the power, and that upon receipt of this information he ratified the act by letter, all of which occurred before the attachment was levied by the marshal. This was certainly sufficient evidence of the execution of the deed to authorize its admission in evidence.

It is claimed, however, that there was not sufficient evidence that S. W. Kniffin was fully informed of all the facts, when he wrote the letter referred to, for that to operate as a ratification, and further, that an assignment cannot be made under the laws of this state by an agent.

S. W. Kniffin knew, or must be presumed to have known, that the deed of assignment, to be valid, must convey all the property which he and W. G. Kniffin owned as co-partners or otherwise, except such as the law exempted from forced sale.

He must be further presumed to have intended to make a valid assignment. He directed an assignment to be made on the contingency which occurred, was notified that it had been made, then expressed his satisfaction with it, and, up to the time of the trial of this cause, recognized it as in all respects valid.

It is true that the conversation had before the assignment, was in relation to the partnership business, and the probable necessity for an assignment growing out of its condition, but this does not affect the question of intention, nor the power of the agent to do what was necessary to be done to accomplish what the parties intended to do ; i. e., to make an assignment of all such property as, under the laws of this state, was requisite to a valid assignment, the same to be disposed of and for the purposes provided in the statute. Such is the effect of the deed which was made.

What a person under no disability may do in person, he may ordinarily do through an agent, but it is claimed that this is not true under the act of March 24, 1879, regulating assignments—that the deed of assignment must be the personal act of the owner of the property assigned, and, as an evidence of this, it is urged that the assignor must make oath to the schedule.

It is true that the second section of the act does require that the inventory and schedule shall be verified by the oath of the debtor, but this is not essential to the validity of the assignment; for the tenth section declares that "no assignment shall be declared fraudulent or void for want of any inventory or list, as provided herein, but if such

list and inventory be not annexed and verified, as provided in this act, it shall be *prima facie* evidence that the assignor has secreted and concealed some portion of the property belonging to his estate from his assignor, unless," etc.

It is said that "the processes provided against the assignor and the penalties denounced against him, are all personal, and cannot be transferred to and performed by, or enforced against, an agent." If an agent makes a false oath in the course of the business of his principal, he may be indicted and convicted for false swearing or perjury, as the case may be, as though the false oath were taken in his own business. That a court may not be able to bring before it at all times an assignor for the purpose of examining him as to property supposed to be concealed, or for the purpose of compelling him to deliver such property to the assignee, would be no reason for holding an assignment invalid, for, if so, the debtor would have it in his power to defeat the assignment at any time by withdrawing himself from the territory over which the court has jurisdiction. There is doubtless much in the statute which indicates that it was expected to apply to persons here resident mainly, but there is much in it which indicates that it was intended to benefit the creditors of those who have property and transact business here who, however, may reside elsewhere.

This is especially true of the law as amended. If assignments, made under the law in force in this state, were operative by force of the law alone, it is evident that they could operate only upon property within this state, and upon persons here resident. Such, however, is not their character. The making of a deed of assignment is the voluntary act of the debtor, his volition calls it into existence, the law neither makes it for him nor compels him to make it, but permits him to do it, and provides what the legislature doubtless deemed sufficient rules and safeguards to secure the faithful administration of the trust fund which through it goes into the hands of the assignee. If one making a deed of assignment, whether a citizen of this state or of another, should have property situated in another jurisdiction, which, under the laws of that jurisdiction could not pass by the assignment, then, doubtless the assignment would be in so far inoperative, but that would be no reason for holding the assignment invalid here.

Creditors are under no obligation to take under an assignment, whether it exacts releases from those who do or not. The law simply makes an assignment made under the laws of this state valid here, and, that the assignee may not be able to enforce it in another jurisdiction against property there situated, cannot affect its validity here. When the assignment is made in accordance with the laws of this state, the

property here situated is withdrawn from the reach of the attaching creditor.

In the case before us, it appears, with all reasonable certainty, that all the property of the assignors that would pass by an assignment was in this state, where resided one of them.

Fish Bros. & Co. have also appealed, and assigned as error the ruling of the court below refusing them leave to intervene. We are of the opinion that there was no error in this. According to the averments of their petition, they were but joint wrongdoers with the officer who executed, at their request, the process which they had sued out. The plaintiff was under no obligation to sue them all. If there had been no objection urged against their intervention, to have permitted it would have done no harm. Such a course, where no objection is urged, has frequently been allowed, but the question now is, was it their legal right so to intervene?

When one will be liable over to a party to an action, in case it is decided against him, as in case of warranty of title to land, the statute frequently gives to the defendant the right to have the party who will be liable to him, in case the action goes against him, made a party defendant, or the right is sometimes given to the person so liable so to make himself. In the case before us, no such facts are shown as give them any statutory right to become parties to the action.

They claim the right to become parties, solely upon the ground that to induce the defendant to do a wrongful act they executed to him a bond, which the law recognizes as valid, whereby they have agreed to indemnify the defendant against any liability that may be fixed upon him or discharged by him on account of the act which they induced. This gives them no legal right to intervene in this case.

Their own statement is that they have been notified of the pendency and nature of the action, called upon to defend it, and notified that they will be held responsible upon their indemnity bond in case judgment goes against the person to whom they gave that bond. No right of theirs is imperilled by refusing to permit them to intervene. They are at liberty, by their own showing, in the name of the party to whom they may become liable, to make every defense they could make, were they parties to the record. They could employ counsel to manage the case, and bring forward all the evidence attainable. There was no fact stated which would make their intervention necessary to the protection of any right they claimed to have.

There is no error in the judgment and it will be affirmed.

AFFIRMED.

[Opinion delivered May 25, 1886.]