TEXAS & PACIFIC RAILWAY COMPANY v. MATTIE WEATHERBY.

Decided January 20, 1906.

**1.—Foreign Corporation—Venue.**

A foreign corporation can not be sued, over its objection, in a county in this State in which it has no agency or representative.

**2.—Same—Texas and Pacific Railway Company.**

The Texas and Pacific Railway Company being incorporated by the Congress of the United States is not such a foreign corporation as is contemplated by the 25th clause of article 1194 of the Revised Statutes of the State of Texas relating to venue.

**3.—Same—Same.**

The Texas and Pacific Railway Company, although directly incorporated by Act of Congress, did also by legislative acts of the State of Texas become

the assignee and successor of all the rights and privileges of the Southern Transcontinental Railway Company and the Southern Pacific Railway Company, corporations created by the State of Texas, and is therefore in no attitude to claim its corporate existence as foreign to this State.

### 4.—Lost Trunk—Value of Contents—Pertinent Testimony.

In a suit for the value of the contents of a trunk alleged to have been lost by defendant, the plaintiff having testified as to the contents and value of the trunk, it was error to refuse to permit an agent of the defendant who had seen the contents of said trunk to testify as to the contents, its quality and value.

### 5.—Pleading—Contents of Trunk—Itemized Statement.

In a suit for the value of the contents of a lost trunk the pleading of the plaintiff should give an itemized statement of the contents.

### 6.—Liability for Unchecked Baggage.

Where a passenger's baggage is in fact received by the carrier, and a failure to secure checks for the same is caused by the carrier, the carrier is liable in case of loss.

Appeal from the County Court of Stephens County.   Tried below· before Hon. A. J. Powers.

*Arthur Speer*, for appellant.—The court erred in overruling appellant's plea of privilege.  Rev. Stats., art. 1194, sec. 25; Texas & P. Ry. Co. v. Lynch, 75 S. W. Rep., 486, and statutes there cited; Texas & P. Ry. Co. v. Edmission, 52 S. W. Rep., 635, 50 S. W. Rep., 607; Laws 1899, p. 214; Laws 1901, p. 31.

The court erred in overruling appellant's special exception to appellee's claim as pleaded, that it is insufficient in that the items of the contents of said trunks and the value of said items are not stated. Houston, E. & W. T. Ry. Co. v. Seale, 67 S. W. Rep., 437.

The court erred in refusing to permit J. E. Pitzer to testify as to the condition of the contents of said trunks and their value to Mrs. Weather--by at Cisco, Texas, and in refusing to permit him to state that the clothing was simply made of cheap material, much of it dirty or soiled, and that in his opinion it was worth to Mrs. Weatherby, at Cisco, Texas, about $50.   Galveston, H. & S. A. Ry. Co. v. Fales, 77 S. W. Rep., 234.

A common carrier is not required to transport passenger's baggage to point of destination of passenger, unless the baggage is received and checked by the carrier.   Rev. Stats., art. 4505.

No brief for appellee.

CONNER, Chief Justice.—This suit was instituted in the Justice's Court of Precinct No. 6 of Stephens County on November 16, 1904, by the appellee against the appellant for the sum of $190, the alleged value of the contents of two trunks charged to have been delivered to and converted by the appellant company.   So far as shown by the record, appellee's claim was exhibited alone by the following written statement, to wit: "Breckenridge, Texas, November 14, 1904.   Texas & Pacific Railway Company to Mrs. Mattie Weatherby, Dr., December, 1903, to damages for loss of two trunks and their contents on the Texas & Pacific Railway in the month of December, 1903, between El Paso,

Texas, and Texarkana, Texas, value, $190." Appellant filed its plea of privilege in said court, but the same was overruled and the trial resulted in a judgment for appellee for the full amount claimed. Appellant duly appealed to the County Court and there again presented its plea of privilege, which was again overruled, and a subsequent trial resulted as in the Justice's Court.

The principal question presented on this appeal from the judgment of the County Court arises under the assignments attacking the court's action in overruling the plea of privilege. The facts relating to this question are that appellee at the time of the institution of the suit resided in the precinct in which the suit was brought, and the appellant company then as now, operated its line of railway through the southeast corner of Stephens County and through said precinct. Appellant at no time had within said precinct or county an office or local agent, and its domicile and principal office was, as alleged, in Dallas County, Texas, it also having numerous local agents along its line. Appellant bases its right to a ruling in its favor upon the alleged fact that it is a foreign corporation, which it is urged brings the case within the twenty-fifth clause of article 1194 of the Revised Statutes relating to venue, which provides that foreign, private or public corporations, not incorporated by the laws of this State and doing business within this State, may be sued in any court within this State having jurisdiction over the subject matter . . . in any county where such company may have an agency or representative, or in the county in which the principal office of such company may be situated, etc. It seems clear from the record that appellee's case is within this exception if in fact the appellant company is a foreign corporation. If not, then we think the venue of the suit falls within exception twenty-three of the article of the statute cited. Exception twenty-three provides that suits against a railroad corporation, . . . may be brought in any county "through or into which the railroad of such corporation extends or is operated." So that the important question for us to determine is whether the appellant company is a foreign corporation within the meaning of the twenty-fifth exception hereinbefore referred to. We conclude that it is not and that its corporate character is such as to bring it within the terms of the twenty-third exception also hereinbefore mentioned. While the plea of privilege alleges that appellant is a foreign corporation, we construe this allegation as being a mere conclusion of the party making the affidavit; for we judicially know that the Texas & Pacific Railway Company was incorporated under the Acts of the Congress of the United States, and a corporation so deriving its existence can not, we think, as before stated, be denominated a foreign corporation in the sense now insisted upon in behalf of appellant. We are not aware that the precise question has been before presented in this State, but it has been held that the appellant company by virtue of its incorporation under the Acts of Congress is entitled to remove certain classes of suits that may be instituted against it in State Courts to the Circuit Court of the United States upon the ground that such suit or suits "arise under the laws of the United States" and not on the ground of diverse citizenship. See Removal Cases, 115 U. S., 1 (Law Ed., Bk. 29, page 319) ; Texas & Pac. Ry. Co. v. Cody, 166 U. S., 606 (Bk. 41, Law Ed., 1132) ; Texas &

Pac. Ry. Co. v. Davis, 93 Texas, 378. In the case of McKee v. Coffin, 66 Texas, 304, it was held in effect that a United States marshal was not entitled to remove a suit against him to the Circuit Court of the United States merely because he derived his official character by virtue of federal laws or appointment. And it was expressly held by the Supreme Court of Pennsylvania in the case of the Commonwealth v. Texas & Pac. R. R. Co., 98 Pa. St. Rep., 90, that the appellant company is not a foreign corporation within the meaning of one of the revenue acts of that State. In that case the Auditor General and State Treasurer had levied a license tax against the Texas & Pacific Railway Company of $12,500 on account of its having an office within the commonwealth named for the use of its officers and for the transaction of its business without having obtained a license from the Auditor General so to do, such license tax being authorized by the revenue laws of Pennsylvania under the circumstances appearing, against foreign corporations. From the imposition or settlement of such tax the Texas & Pacific Railway Company appealed to the Court of Common Pleas and filed among others the following specifications of error: "First, the said settlement is erroneous and illegal because the Texas & Pacific Railway Company has, by reason of its charter granted by the Congress of the United States, a legal existence in Pennsylvania, and not being a foreign corporation, is not subject to the provisions of the sixteenth section of the Act of June 7, 1879, the said sixteenth section relating to foreign corporations only." The Court of Common Pleas sustained this contention and on appeal to the Supreme Court the question was there disposed of in the following language:

"The general government, in its relation to that of the several States, can not be considered a foreign government in the ordinary acceptation of that term. Within the sphere of its delegated powers its authority extends over all the States of which it is composed, and to that extent it may be said to be identified with the government of each. Hence, a corporation created by the government of the United States can not with propriety be called a foreign corporation. It is contended, however, that in a more comprehensive sense all corporations not created directly by State authority may be classed as foreign, in contradistinction to those of exclusively State origin; and that such was intended to be the meaning of the word "foreign," as used in the Act. This might be so, if there was anything in the Act itself indicative of an intent to use the word in that sense; but there is not. On the contrary, in the fifth section, which imposes a tax on limited partnerships, etc., they are described as 'partnerships organized under or pursuant to the laws of this State, or of any other State or territory, or of the United States, or under the laws of any foreign State, kingdom or government,' thus clearly showing that when the Legislature intended to tax associations created by the general government they used apt words of description for that purpose. The same distinction is observed in other portions of the Act, especially in the sixth section. The construction adopted by the learned president of the Common Pleas is so fully sustained, on principle as well as authority, that it is unnecessary to add anything to what it so well said in his opinion."

We approve what was thus said by the Supreme Court of Pennsylvania

insofar as pertinent to the question of venue before us. In addition to which the appellant company, while directly incorporated by Act of Congress, may be said in a very just sense to have been also incorporated by the laws of Texas. For certain it is that prior to 1873 the State of Texas had by legislative acts incorporated the Southern Transcontinental Railway Company (see Act approved July 27, 1870) and the Southern Pacific Railway Company (see Act approved February 16, 1852) granting to them, among other things, the usual powers and privileges of railroad incorporations, and that the appellant company as assignee and successor acquired their rights and privileges by consolidation. Such consolidation of the first two companies named with the Texas Pacific Railway Company was expressly authorized by section 11 of the Act of the Texas Legislature passed May 24, 1871, and was later formally recognized and in effect ratified by Act passed May 2, 1873. In the absence of constitutional restraints we know of no objection to the grant of corporate powers by reference to the rights and privileges conferred upon named corporate bodies, and it would seem that the express recognition and approval of the purchase of the franchises of the Southern Transcontinental Railway Company and the Southern Pacific Railroad Company, incorporated under the laws of Texas, amounted to a legislative grant to the appellant company by necessary implication of all the corporate powers of the former companies. An instance that will perhaps serve to illustrate the thought in mind may be seen by reference to the Binghampton Bridge Company case reported in 3 Wallace, 51, Law Ed., 137, where the charter powers of one corporation were determined by reference to those of another, and where the Supreme Court of the United States declares that "it is not unusual in the legislation of this country to grant vast powers in a short act by referring to and adopting the provisions of other corporations of like purpose." At all events great property interests, corporate privileges and rights were conferred and recognized by the several acts of the State of Texas to which we have referred as may be readily seen by reference to such legislation. Such interests, privileges and rights have been continuously claimed and exercised by the appellant company since the enactments mentioned, so that to a very material extent at least the appellant company has long been operating under and in accordance with charter privileges and rights especially conferred upon it by the Texas Legislature and it is in no attitude, we think, to now claim its corporate existence as foreign to this State. We at least conclude that it is not within the meaning of our statute prescribing the venue of suits against foreign corporations, and that the trial courts therefore committed no error in overruling the appellant's plea of privilege.

The judgment must be reversed, however, because of the court's ruling in excluding evidence. Briefly stated, appellee testified that she arrived in El Paso, Texas, on her way from some point in New Mexico, about 11 o'clock a. m., December 25, 1903; that while on the train entering El Paso from New Mexico, she delivered baggage checks for the two trunks involved in the controversy to an agent of a transfer company directing him to deliver the trunks at the Texas & Pacific depot, it being appellee's purpose to go to Cisco, Texas; that she went to the Texas & Pacific depot in El Paso about 6 o'clock on the evening

of the day of her arrival, and went to the ticket office and bought a ticket over the appellant's line of railway to Cisco; that she exhibited said transfer tickets to the agent and stated that she "wanted her trunks fixed and asked him what she must do with them;" that the agent looked at the transfer checks and said to her, "You get on that train at once and be quick about it or you will be left. Your trunks are out there on the platform and are being put on or will be put on the train at once." She further testified that the train at the time was standing at the depot; that she rushed out as quickly as she could with the children and got on the train; that "they had time to have checked her trunks if they would have done it." It further appeared that appellee did not hear of her trunks thereafter until since the institution of this suit on November 16, 1904. It further appeared, however, from the evidence that the appellant company shortly before the institution of the suit found two trunks with other unclaimed baggage in the city of Dallas, Texas, which the evidence tended very strongly, if not certainly, to show were the trunks in controversy. In this condition of the evidence, appellant offered to prove by J. E. Pitzer, one of its agents, that he knew the condition and contents of the trunks; that the contents consisted of articles of wearing apparel and other articles of purely family use of no market value, and were not of value to plaintiff exceeding $50 and that the clothing were soiled, simply made, and of cheap material. This evidence was exluded by the court upon appellee's objection that it was "immaterial." Appellee testified that the value of the contents of the trunks to her was in excess of the amount for which she sued, and it appears that her counsel was permitted to testify that "he did not bring suit for more than $200 because he wanted to bring it within the jurisdiction of the Justice's Court and in the precinct through which the Texas & Pacific runs." It hardly seems necessary for us to cite authority to sustain our conclusion that in thus rejecting the evidence of the witness Pitzer the court erred. It was directly pertinent to the material issue of value. And, while not assigned as error, we also suggest that we fail to see why appellee's counsel should have been permitted to testify as quoted.

In view of another trial, we also suggest that it was appellant's right to have appellee state, as far as she could do so, the several items constituting the contents of her trunks. The appellant in the first instance was entitled to have such information in order to enable it to be prepared to meet the issues involved, which, among others of course was the question of value. See Houston, E. & W. T. Ry. Co. v. Seale, 67 S. W. Rep., 437. The ruling of the court, however, in this respect appears to have been harmless, because of the further fact appearing from the record that the trunks were in appellant's possession and it was already informed of the contents.

The ruling of the court in permitting appellee to testify to the transportation of her trunks over other railways, if not proper, was at least harmless. The trunks were not transported on any through contract and such testimony fails to support any of the material issues involved, but it was perhaps admissible as mere matter of introduction.

We also think that appellant's requested instruction No. 4, was properly refused. That instruction was, "You are charged that the

defendant is not required to deliver baggage at point of destination of passengers unless defendant received and checked said baggage." The agent at El Paso denied appellee's testimony to the effect that her transfer checks had been exhibited to him, and that he directed her to immediately take passage, stating that the trunks were on the platform and had been or would be shipped. The conflict of testimony thus presented, however, was for the jury, and if the jury should find that appellee's trunks had been in fact received by appellant for transportation, and that it undertook to do so and that appellee's failure to secure baggage checks was by appellant's direction, then appellant's failure to check the baggage would constitute no defense.

The effect of appellant's tender of trunks and contents to appellee, as suggested by the evidence and mooted in appellant's brief, is not raised by any assignment of error and hence is not determined. But for the error of the court in rejecting the testimony of the witness Pitzer, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*