## CITY OF SWEETWATER et al. v. HAMNER.
## (No. 10768.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 10, 1923. Rehearing Denied Dec. 15, 1923. Writ of Error Refused Feb. 1, 1924.)

**1. Municipal corporations ☞277 — City held not empowered to extend water mains beyond limits.**

Under Rev. St. arts. 769–772, empowering cities authorized by charter to own and operate waterworks, to sell water to persons and corporations outside the limits of the city, to prescribe the kind of water mains within or beyond the limits of the city, and to inspect and require the mains to be kept in good order, and article 1096d, empowering a city chartered under article 1096a et seq. to own and operate waterworks, a city so chartered was not empowered to extend the mains of its waterworks system to places and persons lying outside the city for the purpose of furnishing such places and persons with water, in view of Const. art. 3, § 52, and article 11, § 3.

**2. Municipal corporations ☞57—Powers confined to corporate limits.**

A municipal corporation cannot exercise its powers outside its limits unless expressly authorized.

### On Motion for Rehearing.

**3. Municipal corporations ☞277—Statutes as to city's right to sell water beyond limits held applicable to cities with home rule charters.**

Rev. St. arts. 769–772, empowering "all towns or cities of the state of Texas which may have been or may hereafter be chartered or organized under the General Laws of Texas, or by special act or charter," and which are authorized to operate waterworks, to sell water to persons or corporations residing outside the limits of the city, *held* applicable to cities with home rule charters, adopted under Vernon's Sayles' Ann. Civ. St. 1914, art. 1096a et seq.

Appeal from District Court, Nolan County; W. P. Leslie, Judge.

Suit by Ed J. Hamner against the City of Sweetwater and others, in which the United States Gypsum Company intervened. From judgment rendered, the defendants and intervener appeal. Affirmed.

A. B. Yantis and Harry R. Bondies, both of Sweetwater, Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Douthit, Mays & Perkins, of Sweetwater, for appellants.

Ed J. Hamner, of Sweetwater, for appellee.

BUCK, J. Ed J. Hamner filed suit against the city of Sweetwater, its mayor and two commissioners, seeking to restrain the respondents from extending the water mains of the city some 2½ miles beyond the city limits to the plant of the United States Gypsum Company. He alleged that under the charter of the city of Sweetwater the commissioners had the power to levy and collect within the city limits an annual tax of not exceeding 80 cents on each $100 worth of property as assessed for taxes, for general revenues, streets and bridges, and to pay the annual interest and provide for a sinking fund for all outstanding bond issues and other valid obligations owing by the city at the time of the adoption of the charter; that the commission also had the power to levy and collect such additional taxes as might be found necessary to pay interest and provide sinking funds for such additional issues of bonds for city purposes, authorized by the laws of the state of Texas and by the charter, when said proposed bond issues and tax levies had first been submitted to a vote of the people and by them adopted and approved; that the commission should have power to levy additional taxes for city purposes authorized by the vote of the people.

The charter further provided that the city of Sweetwater should have the power to buy, own, construct, or lease within or without the city limits, and to maintain and operate a system of waterworks, and to demand and receive compensation for services furnished for private purposes or otherwise, and to exercise the right of eminent domain thereinafter provided for in the appropriation of lands, right of ways that might be proper and necessary to efficiently carry out said objects.

He further alleged that the charter provided that:

"To have the right to acquire, own, erect or lease, maintain and operate waterworks and waterworks system for the use of the city of Sweetwater and its inhabitants, to regulate the same and have power to prescribe rates for water furnished and to acquire by purchase, donation or otherwise, suitable grounds within and without the city limits on which to erect any such works and the necessary right of way, and to do and perform whatsoever may be necessary to construct, operate and maintain the said waterworks system and to compel the owners of all property and the agents of such owners or persons in control thereof to pay all charges for water furnished upon such property. To provide that all receipts from the waterworks may, in its discretion, constitute a separate or sacred fund, which shall be used for no other purposes than the extension improvement, operation, maintenance, repair, and betterment of said waterworks system or waterworks supply and to provide for the pledging of any such receipts and revenues for the purpose of making of any such improvements and the payment of the principal and providing an interest and sinking fund for any bond issue therefor, under such regulations as to the issuance of bonds as is provided by this charter and the General Laws."

And that there are no other provisions of said charter covering said subject-matter

or that is contrary to, or variant with, same.

He also alleged that article 17, § 3, of the charter, provided:

"That the revenues derived from the operation of any of such public utility plants shall be appropriated and used only for the payment of operating expenses, for maintenance, interest and depreciation accounts, for replacements and betterments and for the payment of interest and providing a sinking fund for any outstanding bonds or indebtedness created or assumed for the purpose of the purchase, construction or improvement of any such plant, together with at least three (3) per cent. on its gross earnings to be applied to an emergency fund for the sole use and benefit of said utility plant; that the rates of service may be so regulated as to produce sufficient revenue to pay when due the charges required herein."

He further alleged that pursuant to the powers invested in it by the charter the said city of Sweetwater had heretofore bought and constructed and now owned a system of waterworks whereby and from which it furnished its citizens and industries within its limits water at a specified price and thereby received, acquired, and has a large annual revenue, to wit, approximately $28,000 per year, and has had such annual revenue for a long time since; that in order to pay for said system of waterworks said city of Sweetwater, in due form of law, created a bonded indebtedness of $315,000 in the form of bonds issued by said city, $310,000 of which said bonds bore 5½ per cent. interest per annum and mature in 1954, and $5,000 of said bonds bore 6 per cent. interest and matured in 1938, and in order to pay said interest and create a sinking fund the city of Sweetwater levied an annual tax on all taxable property within its limits of from 50 cents to $1 on each $100 valuation of such taxable property; that a small amount only of said annual revenues from said waterworks has heretofore been used or is now being used for operating expenses, or for replacements and betterments, not exceeding 50 per cent. of the revenues, and none of it is now or has ever been used to pay the interest and create a sinking fund for said outstanding bonds, or to provide the emergency fund specified in its charter, but the balance of said revenues has been and is now being unlawfully used to pay all kinds and classes of claims, debts, and obligations of the city; that, if said revenue from said waterworks was lawfully disbursed, it would provide a sufficient fund to take care of the maintenance and operating expenses of said waterworks and provide a sinking fund and pay the interest and provide the necessary emergency fund provided by law, and said tax of 50 cents to $1 now levied and collected by said city, would be unnecessary and the taxpayers, including plaintiff, would be relieved of said tax burden.

Wherefore plaintiff alleged that the manner in which said revenues is handled and disbursed by the defendants is illegal, unauthorized, and amounts in law to a misappropriation.

Relator further alleged that the commission of the respondent city of Sweetwater are intending to enter into a contract with a nonresident corporation, the United States Gypsum Company, to lay a pipe line 2½ miles outside of and beyond the limits of the city of Sweetwater, so as to convey water to the plant of said Gypsum Company, and to pay for said pipe line, labor, etc., by issuing interest-bearing warrants payable by the city of Sweetwater out of the revenues of the waterworks within 10 years with interest at 6 per cent. per annum, and by means of said pipe line so to be constructed said Gypsum Company is to be furnished water at the same price as is charged to resident taxpayers residing in the city limits of said city; that the contemplated cost of said pipe line is estimated to be $20,000, and that no part of same is to be paid for by said Gypsum Company. Wherefore it was alleged that said city of Sweetwater and its commissioners would thereby misappropriate and use and divert from the use designated by the law $20,000 of said revenues of said waterworks, plus the interest thereon for 10 years, and will create a bonded or interest-bearing indebtedness against the city of Sweetwater and its taxpayers without their consent in manner and form as provided by the charter and in violation of the law.

He further alleged that under the rules and regulations provided by the commission, if a taxpayer resident within the city limits wishes to purchase from the city water to be used on his premises, he is required to pay all expenses of tapping the city's main at its nearest point and for all piping and expenses in laying said pipe line to his premises and then pay additionally for the water used by him; that the United States Gypsum Company is not a resident of Sweetwater and pays no taxes to the city of Sweetwater, and the plant to be provided with water as herein alleged is 2½ miles distant from and outside of the city limits, wherefore, by the act of the city aforesaid, the city is discriminating against its citizens and taxpayers by compelling them to pay a greater rate or charge for water used by them than they are charging nonresidents and nontaxpayers, which acts are violative of that part of the charter which provides that:

"The rates charged for service furnished by any of the said municipal public utility plants shall be just and equitable and there shall not be allowed to any person, firm or corporation or to any officer or employé of said city, any service free of charge, except it may provide free service for buildings and institutions owned or operated by the city.

"That in determining the rates to be charged and collected for such service the cost of operation, maintenance, depreciations, replacements, betterments, interest charges and the creation

of a sinking fund sufficient to pay principal and interest of any bonds issued for the acquirement, construction or improvement of any such public utility, shall be taken into consideration."

Relator alleged that he was a taxpayer in the city of Sweetwater on property above the valuation of $10,000, and that he had no adequate remedy at law by which he could prevent this misappropriation and misapplication of the revenues of the waterworks system of the city of Sweetwater, contemplated and intended to be made by respondents, and he prayed for the issuance of a writ of injunction restraining the respondents and and each of them from using any revenues derived from the operation of the waterworks plant owned by the city of Sweetwater except as provided by law.

He further prayed that respondents be restrained from making any contract to erect, construct, or maintain any pipe line from any point within the city to any plant or citizen not a taxpaying citizen of the city of Sweetwater and not residing within the city limits; that said respondents be restrained from making any contract to issue any warrants or to pledge any of the revenues of the said waterworks for the payment of any pipe line or construction thereof outside of the limits of the city of Sweetwater for the purpose of furnishing water to any purchaser thereof.

The respondents answered by way of a general demurrer and several special exceptions, and further pleaded certain acts of the Legislature, under which the city of Sweetwater was incorporated, and several articles of its charter, under which it claimed the city of Sweetwater was authorized to extend its water mains and sell its water to persons and places outside of the city limits. It is further pleaded that the relator was guilty of laches in that theretofore on May 20, 1920, the city of Sweetwater obligated itself to the United States Gypsum Company to lay a pipe line to Sweetwater creek, to be used by said Gypsum Company and employés, with the understanding that said company and employés pay for water at the regular rate as fixed by the ordinance, or any such rate that might be charged to the public hereafter; that respondents believed that relator had been apprised at all times of the action of the city of Sweetwater in this respect and had not filed a suit to enjoin the carrying out of the contract until July 18, 1923.

The United States Gypsum Company sought to intervene, and filed its answer.

The respondents adopted the answer of the United States Gypsum Company, and it appears in the record. But upon a hearing the court sustained the exceptions of the relator to the plea of intervention, and the plea of the United States Gypsum Company

259 S.W.—13

was ordered stricken from the record. The prayer of the relator was granted in part. The respondents were restrained: (1) From using any revenues arising from the operation of the waterworks plant owned by the city of Sweetwater, so that same shall be appropriated and used only for the payment of operating expenses, for maintenance, interest, and depreciation accounts, for replacement and betterment, and for the payment of interest and providing a sinking fund for the outstanding bonds created and assumed for the purpose of the purchase, construction, and improvement of said waterworks plant, etc.; (2) from making any contract to erect, construct, or maintain any pipe line from within and extending out of and beyond the city limits to any plant or citizen not a taxpaying citizen of the city of Sweetwater and not residing within the limits of the city of Sweetwater; (3) from making any contract to issue any warrants or to pledge any of the revenues of said waterworks for the payment of any pipe line or construction thereof, outside of the limits of the city of Sweetwater, for the purpose of furnishing water to any purchaser thereof.

But it was expressly provided that a decree should not prohibit or prevent the city of Sweetwater from making or carrying out any contract already made with the United States Gypsum Company, or any one else, whereby said city might sell and furnish to said Gypsum Company, or to any other purchaser, water in such quantities and under such terms and on such conditions as might appear for the best interests of such city, and to permit the Gypsum Company, or any other purchaser of water, to connect with the waterworks mains of said city at and within the city limits, upon the terms and conditions to be prescribed by the city.

From this judgment, the respondents and intervener have appealed.

In City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459, decided in 1908, the Court of Civil Appeals at Texarkana decided that a city, in the absence of authority conferred on it by its charter or other legislative act, had no power to contract to furnish one not an inhabitant of its territory water for use outside of its territory; that a municipal corporation can exercise only such powers as are expressly or impliedly conferred on it by its charter or other legislative act, when strictly construed. A writ of error was refused by the Supreme Court in this case on June 24, 1908. Influenced by this decision, as claimed by the appellants, the proponents of enlarged powers of municipalities in the ownership and control of their public utilities secured the passage of an act by the Legislature in 1909, which act is now incorporated in our civil statutes, and designated as articles 769, 770, 771, and 772. The act is found in the

General Laws of the 31st Legislature, p. 159, and with the caption, preamble, and emergency clause is as follows:

"Cities and Towns—May Own Land Inside or Outside Limits for Waterworks, etc.

"H. B. No. 1. Chapter 88.

"An act providing that all towns or cities of the state of Texas, which may have been or may hereafter be chartered or organized under the General Laws of Texas or by special act or charter, and which town or city owns and operates waterworks, sewers, gas or electric lights, shall have the right to own land for such purposes within or without the limits of such cities and towns, and purchase, construct and operate water, sewer, gas and electric systems inside or outside of such town or city limits, and sell water, gas, electric light and power and sewer privileges; and authorizing such town or city to make such rules and regulations and prescribe penalties concerning same as shall be necessary and proper, and declaring an emergency.

"Be it enacted by the Legislature of the state of Texas:

"Section 1. That any town or city in this state, which may have been or may hereafter be chartered or organized under the general laws of Texas, or by special act or charter, and which city or town owns or operates waterworks, sewers, gas or electric lights, shall have the power and right to own land for such purposes within or without the limits of such town and city, and may purchase, construct and operate water, sewer and gas and electric light systems inside or outside of such town or city limits, and regulate and control same in a manner to protect the interests of such town or city; and such town or city shall have the power and right to sell water, gas, electric light or power and sewer privileges to any person or corporation outside of the limits of said town or city and to permit them to connect therewith under contract with such town or city, under such terms and conditions as may appear to be for the best interests of such town or city.

"Sec. 2. That such town or city owning or operating such water or gas mains or sewer pipes and electric appliances, shall have the right to prescribe the kind of water or gas mains or sewer pipes and electric appliances within or beyond the limits of such town or city, and to inspect the same and require them to be kept in good order and condition at all times and to make such rules and regulations and prescribe penalties concerning same as shall be necessary and proper.

"Sec. 3. The fact that no legal authority now exists for cities owning the public utilities mentioned in this act to extend the benefits of the same to persons adjacent to such cities, creates an emergency and an imperative public necessity requiring that the constitutional rule requiring bills to be read on three several days be suspended and that this act take effect from and after its passage, and it is so enacted.

"Approved March 20, 1909.

"Takes effect ninety days after adjournment."

It is admitted that the city of Sweetwater was chartered under the General Laws as given in Vernon's Sayles' Ann. Civ. St. 1914, article 1096a et seq. Appellants rely on this statute and certain provisions of the charter of the city of Sweetwater as conferring upon said city the rights to extend its waterworks outside of the city limits for the purpose of furnishing water to customers residing outside of said limits. In the brief of city of Sweetwater it is urged that this law was passed to meet the changing and changed conditions in our state; that populous towns and cities have taken the place of hamlets and villages; that cities often have to go a long distance from their limits to get a sufficient amount of water to supply its inhabitants and its industries; that pipe lines to transport the water must be constructed from its source to the city, reservoirs must be built, pumps and power houses constructed; that, in and around these cities, public enterprises and industrial undertakings are seeking locations, and that such industrial concerns require an abundance of water, lights, sewerage facilities, etc.,; that, in order for a city to grow and prosper, it is proper and necessary to extend to these business concerns the benefits of the city's public utilities, and to furnish them any excess water, electric power, etc., which the city may have; that it was with these conditions in view that the Legislature passed the Act of March 20, 1909, and that a reasonable construction of that act gives to cities the right and authority to extend its water mains and light wires, etc., outside of the city, when such extension is for the best interest of the city; that the facts show that the completion of the contract between the city of Sweetwater and the United States Gypsum Company is for the best interests of the city. As was said by Justice Rasbury in S. W. Tel. & Tel. Co. v. City of Dallas (Tex. Civ. App.) 174 S. W. 636, 640, writ of error denied:

"In pursuing the inquiry thus raised we proceed in the light of the well-settled rule that municipalities, being creatures of the state and existing by the sovereign will and pleasure, possess only such powers as the state confers upon them, with the right of addition or diminution at the state's supreme discretion, and that they may exercise only powers expressly conferred, those necessarily or fairly implied in or incident to the express powers, and those essential to the declared objects and purposes of the corporation. Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143; Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Tex. 114, 134 S. W. 321; 28 Cyc. 258, B, Powers."

In City of Brenham v. Holle et al., 153 S. W. 345, 347, writ denied, the San Antonio Court of Civil Appeals, speaking through Justice Moursund, said:

"A municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those

necessarily or fairly implied in, or incident to, powers expressly granted; (3) those essential to declared objects and purposes of the corporation, not simply convenient, but indispensible. Dillon on Municipal Corporations (5th Ed.) § 237; Williams v. Davidson, 43 Tex. 33; Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143. Dillon, in section 238, quotes, with approval, from the case of Bridgeport v. Housatonuc R. R. Co., 15 Conn. 475, the following: 'In this country all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may not reasonably be inferred. But, if we were to say that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them in some cases the power of self-preservation, as well as many of the means necessary to effect the essential objects of their incorporation. And therefore it has long been the established principle in the law of corporations that they may exercise all the powers within the fair intent and purpose of their creation which are reasonably proper to give effect to powers expressly granted. In doing this they must (unless restricted in this respect) have a choice of means adapted to ends, and are not to be confined to any mode of operation.' 'It is seldom that a rule other than that of strict construction is applied or should be applied, to powers of whatever nature exercised or attempted to be exercised by a public corporation.' Abbott on Municipal Corporations, § 113. 'The rule of strict construction as given in the preceding section is occasionally modified. The courts hold that the rule should not be carried to such an extent as to defeat the very purpose for which the power was granted, if proper to be exercised, and that, where it is necessary to adopt a more liberal rule of construction of a corporate power to accomplish the result sought by the Legislature, it should be done."

To the same effect are the following authorities: 19 R. C. L. p. 768; 28 Cyc. 258; Ottawa v. Carey, 108 U. S. 110, 124; 2 Sup. Ct. 361, 27 L. Ed. 671; Williams v. Davidson, 43 Tex. 34; Dibrell v. City of Coleman (Tex. Civ. App.) 172 S. W. 550, writ refused; City of Dublin v. Stevens, 169 S. W. 189, 190, by Chief Justice Conner of this court.

Bearing in mind the rule of strict construction, by which the courts must be guided in considering the powers of a municipality, we will discuss briefly the law and facts pertinent to the issue in this case.

[1, 2] We do not believe that the Act of March 20, 1909 (articles 669 to 672, inclusive, Rev. Statutes), expressly or by necessary implication, confers on the municipality chartered under the general laws, the authority to extend the mains of its waterworks system to places and persons living outside of the city limits, for the purpose of furnishing such places and persons with water. It has the power under this act to sell water, gas or electric light power or sewer privileges to any person or corporation outside the limits of said town or city and permit them to connect therewith under such terms and conditions as may appear to be for the best interest of such town or city. It also authorizes the city to prescribe the kind of water or gas mains and sewer pipes of such town or city, and to inspect the same and to require them to be kept in good order and condition at all times and to make such rules and regulations and prescribe penalties concerning same as shall be necessary and proper. But the power of inspection of the pipe lines or other means of conveying the water, gas, or electric light power to persons residing outside of the city does not, in our judgment, necessarily carry with it the right or authority to furnish the mains or appliances. If the city has the right, as it has under the law, to sell the products of its public utilities, not needed by the inhabitants of such city, it impliedly has the authority to require that the means of transporting such products be of such character and kind as to avoid waste, and that the city may keep a correct record of the amount of such products used by persons residing outside of the city limits. A municipal corporation cannot exercise its powers outside its limits, except when granted express legislative authority so to do, for all power and privileges conferred by the Constitution and statutes on municipal corporations must be held to be limited in their exercise to the territory embraced in the municipal boundaries, and for the benefit of the inhabitants of the municipality, unless the Constitution or statute expressly provides that such power and privilege may be exercised beyond the corporate boundaries and for the benefit of nonresidents. 28 Cyc. 266; Dillon on Municipal Corporations, § 565. If a city was authorized under this act to extend its water mains beyond its city limits for the purpose of furnishing water to persons or corporations residing outside the limits of such city at a distance of 2½ miles, as alleged in this case, or even 10 feet, it would have the authority to extend such mains to a much greater distance. We do not think such authority is reasonably implied or expressly conferred by the act in question, nor that it would be in harmony with the general purposes of a municipal corporation. The primary purpose of a municipal corporation is to contribute towards the welfare, health, happiness, and public interest of the inhabitants of such city, and not to further the interests of those residing outside of its limits. Article 3, § 52, of the Constitution, in part, provides:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

Article 11, § 3, of the Constitution, provides that no county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in any wise loan its credit

In City of Paris v. Sturgeon (Tex. Civ. App.) 110 S. W. 462, it is said:

"The right of a city to exercise its corporate powers beyond its limits is a question purely and simply of law. * * * It is a question of power. If the power exists, it exists in all cases. If it does not exist, it does not exist in any case. If the power exists, the city could as well furnish water for use 10 miles beyond its boundaries as it could for use 10 feet beyond."

It is evident that the Legislature, in authorizing the city to own land, either within or without the limits of such city, for the purpose of operating waterworks, sewers, gas lines, or electric lights, and authorizing such town or city to purchase, construct, and operate water, sewer, and gas lines and electric light systems inside or outside of such city limits, had in mind the well known fact that oftentimes the source of supply especially of water, is beyond the city limits, and that it is necessary to convey such water or other products of its public utilities from such source of supply to the city. Therefore, it was deemed necessary to authorize a town or city to own, construct, and maintain such water mains or other means of conveyance from such source of supply to the town or city. We feel that no further authority is expressed in any provision of the statutes to which our attention has been called, and especially under article 1096a et seq. In article 1096d, Vernon's Sayles' Ann. Civ. St. 1914, it is said that under the provisions of this act it is contemplated to bestow upon any city adopting the charter or amendment hereunder the full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty:

"To have the exclusive right to own, erect, maintain and operate waterworks and waterworks system for the use of any city and its inhabitants, to regulate the same and to have power to prescribe rates for water furnished and to acquire by purchase, donation or otherwise suitable grounds within and without the limits of the city on which to erect any such works and the necessary right of way."

Evidently by this statute authority is given the city to own, erect, and maintain waterworks system, for the use of the city and its inhabitants, and not for the use of persons living outside of the city and paying no taxes thereto.

On the whole, we conclude that the judgment of the trial court properly disposed of the issues presented, and that it should be affirmed, which is accordingly ordered.

## On Motion for Rehearing.

### I. Appellee's Motion for Rehearing.

[3] Appellee urges, on motion for rehearing, that articles 769, 770, 771, and 772, Rev. Civ. Statutes, do not apply to charters adopted under the Home Rule Bill, or the General Laws, as contained in article 1096a et seq.; that nothing in said general laws authorizes a city chartered thereunder to sell its water or other products of its public utilities to persons or corporations residing outside of the limits of the city; that in order to have such power, a city must perforce go to the act of the Thirty-First Legislature, 1909, given in the original opinion.

We see no reason why the act of 1909 does not apply to the charter of the city of Sweetwater. By the terms of said act, as shown in our original opinion, it is provided that the act is applicable to "all towns or cities of the state of Texas, which may have been or may hereafter be chartered or organized under the General Laws of Texas or by special act or charter," etc.

Certainly, no broader terms of application could be used. The charter of the city of Sweetwater was adopted December 18, 1913, after the act of 1913 (Laws 1913, c. 147 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a –1096i]) took effect, and, of course, long after the act of 1909 took effect. The charter of Sweetwater provides, in article I, that the municipality shall have "such powers, rights, privileges and duties as are allowed by General Laws, and such as are hereinafter provided." Certainly, the acts of 1909 and 1913, aforementioned, were part of the "General Laws," and it was the intention and purpose so expressed that the municipality should have all the powers conferred by each of those acts, if not inconsistent. We believe that the act of 1909, as well as the act of 1913, applies. Quinlan v. H. & T. C. Ry. Co., 89 Tex. 356, 34 S. W. 738; T. & P. Ry. Co. v. Weatherby, 41 Tex. Civ. App. 409, 92 S. W. 58. Therefore we overrule appellee's motion for rehearing.

### II. Appellant's Motion for Rehearing.

Appellants urge, with much vigor and evidence of considerable research, that inasmuch as a municipality has a dual capacity, i. e., a governmental capacity and a proprietary capacity, and inasmuch as it is conceded that it has the right to sell the surplus water to persons residing outside the city limits, that in its proprietary capacity it has the right and authority to extend its mains beyond such limits for the purpose of furnishing water to its nonresident customers; that the right to sell the water carries with it the right to furnish the means of conveyance to the purchasers. A number of authorities are cited, among which are City

of Galveston v. Loonie, 54 Tex. 517; Brennan v. Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Tone v. Tillamook City, 58 Or. 382, 114 Pac. 938; Esberg Cigar Co. v. Portland, 34 Or. 282, 55 Pac. '961, 43 L. R. A. 435, 75 Am. St. Rep. 651; Canavan v. Mechanicsville, 229 N. Y. 473, 128 N. E. 882, 13 A. L. R. 1123; Vilas v. Manila, 220 U. S. 356, 41 Sup. Ct. 416, 55 L. Ed. 491; Omaha Water Co. v. City of Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Andrews v. South Haven, 187 Mich. 294, 153 N. W. 827, L. R. A. 1916A, 908, Ann. Cas. 1918B, 100; 28 Cyc. 263, 265, 266.

We will briefly discuss some of these decisions. We do not find any expressions in the two cases by our Supreme Court, cited by appellee, contrary to our holding in the instant case. In the case of Brennan v. City of Weatherford et al., supra, the court did hold that a more liberal rule of construction is allowed in favor of public charters granted for the general good than in private charters granted for individual gain, and with this doctrine we agree. But we do not think in our original opinion we applied a rule contrary to this. In City of Galveston v. Loonie, it is said that the express power being granted the city to construct sidewalks, for which the lot was ultimately responsible, the city had the implied authority to contract such obligations as were necessary to execute the power. With this announcement we concur. But we do not believe that the deduction made by appellants follows. The appellants urge that since the Home Rule Bill expressly grants to cities and towns the authority to sell its surplus water to person residing outside their limits that there is an implied power granted the city to convey such water to the residences or plants of such nonresident users. We think a reasonable construction of the Home Rule Bill shows that it was not the intention of the Legislature to empower cities chartered under the provisions of this act to construct and maintain water mains to nonresident users, but that it is evident from such act that it intended that the nonresident users should pay for the construction and maintenance of the means of conveyance outside of the city, with the power of supervision reserved to the city, to see that' such mains were constructed and maintained in a way to preserve the rights of the city.

Tone v. Tillamook City, 58 Or. 382, 114 Pac. 938, involved the question of whether the covenant of the city, given in consideration of an easement across the land of plaintiffs' assignors or grantors for the laying of the city's water mains (evidently the mains to the city from the source of supply), was enforceable. There was no question involved as to the power of the city to extend its mains to furnish water to nonresident users. Johnson City v. Weeks et al., 133 Tenn. 277, 180 S. W. 327, 3 A. L. R. 1431, involved the question of taxation by the county of a pipe line constructed by the city from its limits to the National Home for Disabled Volunteer Soldiers. The home was situated partly within and partly without the city. The Legislature of Tennessee had granted the right to Johnson City to "own and operate a system of waterworks for said city and adjacent territory." The court held that the home and its lands were "adjacent territory," and upheld the claims of the city that the pipe line was exempt from taxation.

We shall not extend this opinion by a further consideration of the cases cited by appellants, but believe our disposition of the issues involved in our original opinion was correct. Therefore appellants' motion for rehearing is overruled.