

# THE ATTORNEY GENERAL
## OF TEXAS

October 20, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Barry L. Macha          Opinion No. JM-811
Criminal District Attorney
Wichita County Courthouse         Re: Authority of a general
Wichita Falls, Texas    76301     law city to enact ordi-
                                  nances affecting city-
                                  owned property outside the
                                  city's corporate limits
                                  and extraterritorial juris-
                                  diction

Dear Mr. Macha:

You inform us that a general law city located in Wichita County, Texas, owns certain real property which is located outside the corporate limits of the municipality. The property is not adjacent to or contiguous with either the corporate limits of the city or the area comprising its extraterritorial jurisdiction. The city wishes to protect the property by enforcing city ordinances which prohibit trespassing, littering, vandalism, and discharging weapons. The city wishes to protect itself from civil liability by enforcing safety ordinances. It also hopes to bring the property into compliance with regulations of the Texas Department of Health and the Texas Department of Water Resources.

The situation has prompted the following questions:

   1. If a general law city owns real property which is noncontiguous with and located outside of the corporate limits and extraterritorial jurisdiction of the city, can that city govern such property through the enforcement of city ordinances?

   2. If so, what court has proper jurisdiction over proceedings resulting from the violation of such ordinances?

   3. [I]f the city cannot govern such property through its ordinance power, can

the city protect  its property  in a  manner
consistent with that of a private landowner?

It is axiomatic that all powers granted to a city may
be exercised only within the corporate limits  of the city
unless expressly extended by statute to  apply outside the
corporate limits.  City of  West Lake  Hills v.  Westwood
Legal Defense Fund, 598 S.W.2d 681, 686 (Tex.  Civ. App. -
Waco 1980, no  writ); City  of Sweetwater v. Hamner,  259
S.W. 191 (Tex. Civ. App. - Fort Worth  1923, writ dism'd).
Thus, municipal  ordinances  are held  to  have no  extra-
territorial  effect  unless  specifically  provided  by
statute.  E.g., Shows  v. City of  Dallas, 172 S.W.  1137,
1138 (Tex. Civ.  App. - Dallas  1915), aff'd 212  S.W. 633
(Tex. Comm'n App. 1919, holding approved).

Sections 51.001, 51.012,  and 51.032 of  the recently
enacted Local  Government  Code (effective  September  1,
1987), Acts 1987,  70th Leg., ch.  149, §1, at  1511-1513,
grant the governing  bodies of general  law municipalities
authority to enact ordinances, not inconsistent with state
law, that are necessary to carry out powers granted by law
to  the  municipalities  and  to  properly  govern  the
municipality.  None  of  these  provisions  confer  extra-
territorial  ordinance-making  authority  on  general  law
municipalities.  Compare  Local  Gov't  Code  §§42.001
(purpose of designating  extraterritorial jurisdiction  is
to promote and protect general health, safety, and welfare
of persons residing  in and  adjacent to  municipalities);
42.021 (extent of extraterritorial  jurisdiction limited).
The statutes from  which the  enumerated Local  Government
Code provisions  are  derived also  did  not grant  extra-
territorial effect to city ordinances.  See V.T.C.S. arts.
962, 968, 1011,  1145 (repealed by  Acts 1987, 70th  Leg.,
ch. 149, §49, at 2543-44).  Sections 51.015  and 51.018 of
the Local Government Code  authorize "Type A"  general law
cities[1] to  hold, purchase,  lease,  or  convey  property
located in or outside the city.  Section 51.034 authorizes

---

1.  A "Type A" general law municipality is one which
has either (a) incorporated under subchapter  A of chapter
6 of the Local Government  Code, (b) converted to  a "Type
A" general law  city under subchapter  B of chapter  6, or
(c) operated under chapters 1-10 of title 28  of the civil
statutes immediately preceding September 1, 1987,  and has
not changed its "Type A" status.  Local Gov't Code §5.001.

"Type B" general law cities[2] to hold and dispose of real property located within their municipal boundaries. "Type C" general law municipalities[3] may, depending upon population, possess the same authority to acquire and convey real property as "Type A" or "Type B" general law cities. Local Gov't Code §51.051(a), (b). None of these provisions empowers a general law city to protect property outside its corporate limits or extraterritorial jurisdiction by the enforcement of its own ordinances. Cf. Local Gov't Code §§43.023(g), 43.024(d), 43.025(c), 43.028(e) (inhabitants of territory annexed by a municipality are bound by ordinances of the municipality). Accordingly, your first question is answered in the negative. This answer dispenses with the need to consider your second question.

Your final question is whether a general law city may protect its property in a manner consistent with that of a private landowner. The general rule regarding the authority of a municipal corporation to protect property under its control was stated in Adderley v. Florida, 385 U.S. 39, 47 (1966):

> The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.

See also City of Athens v. Bromall, 252 N.E.2d 298 (Oh. App. 1969); 10 McQuillin, The Law of Municipal Corporations §28.23a (3rd ed. 1981). You do not indicate the use for which the property owned by the city is dedicated. We

---

2. A "Type B" general law municipality is one which has not changed its "Type B" status and has either incorporated under chapter 7 of the Local Government Code or operated under chapter 11 of title 28 of the civil statutes immediately preceding September 1, 1987. Local Gov't Code §5.002.

3. A "Type C" general law municipality is one which has not changed its "Type C" status and has either (a) incorporated under subchapter A of chapter 8 of the Local Government Code, (b) converted to "Type C" status under subchapter B of chapter 8, or (c) operated under chapter 12 of title 28 of the civil statutes immediately preceding September 1, 1987. Local Gov't Code §5.003.

have been informed, however, that the city intends to develop the property for use as a public park. A municipality may acquire and improve land located outside its boundaries but within the county in which the city is situated to be used for public parks. Local Gov't Code §331.001(a), (b)(1), (c). Parks acquired pursuant to chapter 331 of the Local Government Code are "under the control and management of the municipality or county acquiring the park." Id. §331.005(a). Furthermore, parks acquired and maintained pursuant to chapter 331 "shall be open for the use of the public under rules prescribed by the governing body of the park." Id. §331.007. Accordingly, although a city may not enforce its ordinances on the property in question, it may manage and control the land it intends to develop as a public park and prescribe rules regulating the use of the park by the public.

## S U M M A R Y

A general law city may not enforce city ordinances on land it owns outside the corporate limits or extraterritorial jurisdiction of the city. A municipality, no less than a private owner of property, may protect and preserve property under its control for the use to which it is lawfully dedicated. A park acquired pursuant to chapter 331 of the Local Government Code is under the management and control of the municipality acquiring the park. Local Gov't Code §331.005(a). The governing body of the park may prescribe rules regulating its use by the public. Local Gov't Code §331.007.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General